**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| EDWARD T. SAADI, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>PIERRE A. MAROUN, aka "Losers," an individual, JOHN DOE #3, aka "Bashir4Ever," an individual whose name is presently unknown, JOHN DOE #4, aka "Bush," an individual whose name is presently unknown, JOHN DOE #5, aka "b2a3kafra," an individual whose name is presently unknown, MAROUN'S INTERNATIONAL, LLC, a Florida limited liability company, and JOHN DOES #7-12, individuals, corporations, organizations, or other legal entities whose names are presently unknown,<br><br>Defendants | ) | CASE NO.: 07-CV-01976-SCB-MAP<br><br>Judge Susan C. Bucklew<br>Mag. Mark A. Pizzo<br><br>**FOURTH AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL** |

**FOURTH AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff EDWARD T. SAADI ("Saadi"), hereby sues Defendants, PIERRE A. MAROUN, JOHN DOES #3-5, MAROUN'S INTERNATIONAL, LLC, and JOHN DOES #7-12, in this action for injunctive relief and damages and states:

## INTRODUCTION

1. This is an action for injunctive relief and damages arising out of (1) the posting of false and defamatory statements about Saadi on an internet "blog," on internet websites, and on internet forums by or with the assistance or participation of Defendants and (2) the carrying out against Saadi of a systematic campaign of

character assassination, intimidation, threats of physical and other harm, bullying, and menacing.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because this is an action for money damages between citizens of different States, in which the amount in controversy exceeds $75,000.00, exclusive of interest and costs.
3. Venue is properly laid in the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. §1391, because a substantial part of the events giving rise to the claims alleged by Saadi occurred in this district; specifically, defamatory statements regarding Saadi were posted to the internet in this district, and/or by using computers and servers located in this district. Venue is also properly laid in this District because one or more Defendants are subject to personal jurisdiction in this district and there is no other district in which the action may otherwise be brought.
4. Defendants are subject to personal jurisdiction in Florida and this district because they: (a) are residents of Florida and this district; (b) have their principal place of business in Florida and this district; (c) engaged in substantial and not isolated activities in Florida and this district; (d) committed tortious acts within Florida and this district; (e) caused injury to persons located in Florida and this district, while at the same time they engaged in solicitation and service activities within Florida and this district; and/or (f) engaged in unlawful conduct in this Florida and this district, specifically, by publishing false and defamatory statements about Saadi within Florida and this district, and/or using computers and servers located in Florida and this district.

## PARTIES

5. Saadi is an individual and citizen of the United States and a resident and citizen of the State of Ohio.

6. Defendant PIERRE A. MAROUN is an individual and citizen of the United States and a resident and citizen of the State of Florida.

7. The true name of Defendant JOHN DOE #3, aka "Bashir4Eever," is unknown to Saadi, who therefore sues this Defendant under such fictitious name. Saadi will ask leave of court to amend this Fourth Amended Complaint and insert Defendant JOHN DOE #3's true name in place of the fictitious name when the same has become known to Saadi.

8. The true name of Defendant JOHN DOE #4, aka "Bush," is unknown to Saadi, who therefore sues this Defendant under such fictitious name. Saadi will ask leave of court to amend this Fourth Amended Complaint and insert Defendant JOHN DOE #4's true name in place of the fictitious name when the same has become known to Saadi.

9. The true name of Defendant JOHN DOE #5, aka "b2a3kafra," is unknown to Saadi, who therefore sues this Defendant under such fictitious name. Saadi will ask leave of court to amend this Fourth Amended Complaint and insert Defendant JOHN DOE #5's true name in place of the fictitious name when the same has become known to Saadi.

10. Defendant MAROUN'S INTERNATIONAL, LLC is a Florida limited liability company with its principal place of business in Tampa, Florida.

11. On information and belief, Defendant PIERRE A. MAROUN controls and dominates MAROUN'S INTERNATIONAL, LLC to the extent that MAROUN'S INTERNATIONAL, LLC is a mere instrumentality or alter ego of Defendant PIERRE A. MAROUN and manifests no separate and independent existence of its own. Defendant PIERRE A. MAROUN engaged in improper, fraudulent, and unjust conduct in the formation and use of MAROUN'S INTERNATIONAL, LLC. Defendant PIERRE A. MAROUN fraudulently used MAROUN'S INTERNATIONAL, LLC as a means of evading liability with respect to the transactions and occurrences and conduct described herein, which were, in truth, personal and not corporate. Said improper and conduct caused injury to Saadi.

12. The true names of Defendants JOHN DOES #7-12 are unknown to Saadi, who therefore sues said Defendants under such fictitious names.

13. Saadi is informed and believes, and on such information and belief alleges, that each of Defendants JOHN DOES #3-5 and JOHN DOES #7-12 published false and defamatory statements concerning Saadi on an internet "blog," on internet forums, and/or other internet websites or assisted or participated in the doing of same by other Defendants. Saadi will seek leave of court to amend this Fourth Amended Complaint and insert their true names in place of their fictitious names when the same have become known to Saadi.

## COMMON ALLEGATIONS

14. Saadi is a 1993 graduate of Georgetown University and a 1996 graduate of the Georgetown University School of Law. Saadi is an attorney licensed to practice law

in state and/or federal courts in Ohio, California, Michigan, and the District of Columbia. Saadi is the sole member of a law firm based in Boardman, Ohio.

15. The Internet is the world's largest network of computer networks. It is a decentralized, global medium of communications that links people and businesses around the world, allowing instantaneous sharing of information. In recent years, the commercial aspects of the Internet have mushroomed, with millions upon millions of individuals and commercial enterprises engaging in daily transactions and making financial and business decisions based upon information found on the Internet. Currently, tens of millions of computers in the United States alone are linked directly to the Internet, and more than 100 million users connect to the Internet worldwide. Countless users spend hours browsing the Internet each day, scouring different sites for information relevant to their business, financial and personal decisions.

16. The World Wide Web (the "Web") is the most popular way to provide and retrieve information on the Internet. Anyone with access to the Internet and proper software can post content on the Web, which may contain many different types of digital information—text, images, sound, and even video. The Web is comprised of millions of separate but interconnected "Web sites" which in turn may have hundreds of separate "Web pages" that display content provided by particular persons or organizations.

17. Google, Inc. ("Google") is a global Internet media company, whose "Google" Web Site (http://www.google.com) is one of the most popular destinations on the Web.

18. Among Google's most popular offerings is its Web site known as "BlogSpot" (http://www.blogspot.com), in which users can design, build, and publish an on-line

publicly accessible diary known as a "blog." Such blogs can be viewed and read by anyone with access to the Web. Each day, countless users around the world read these blogs.

19. One blog available on Google's "BlogSpot" Web site is, or was, located at http://biggestloosers.blogspot.com (hereinafter the "Blog").

20. Other Web sites contain "forums" in which users can engage in interactive written public discussions, sometimes anonymously or pseudonymously. Such forums can be viewed and read by anyone with access to the Web. Each day countless users around the world read and post contributions to these forums. Two Web sites which contain such forums are located at www.lebforces.org and www.bachirgemayel.org (hereinafter the "Forums").

21. Defendants PIERRE A. MAROUN, JOHN DOES #3-5, MAROUN'S INTERNATIONAL, LLC, and JOHN DOES #7-12 have posted false and defamatory statements regarding Saadi on the Blog using the alias "Losers." Examples of these postings are attached hereto as Exhibits "A," "B," and "C." Said false and defamatory statements include, but are not limited to, assertions that Saadi (1) is a "stalker," (2) falsely claims to have a law degree, (3) is "mentally unstable" and "has a complex," (4) received stolen property, and (5) committed statutory rape.

22. Defendants PIERRE A. MAROUN, JOHN DOES #3-5, MAROUN'S INTERNATIONAL, LLC, and JOHN DOES #7-12 have posted false and defamatory statements regarding Saadi to the Forums using the aliases "Bashir4Ever," "Bush," and/or "b2a3kafra." Examples of these postings are attached hereto as Exhibits "D"

and "E." Said false and defamatory statements include, but are not limited to, assertions that Saadi received stolen property.

23. On February 1, 2008, Saadi served PIERRE A. MAROUN with a written notice pursuant to Fla. Stat. Ann. §770.01 of the false and defamatory material and demanded that said Defendants remove, and publish a retraction of, said statements, but said Defendants failed and refused to remove or retract any of the defamatory material within the period set forth in the written notice. A copy of Saadi's written notice and demand for retraction is attached as Exhibit "F."

24. After the commencement of this action, and in retribution therefor, Defendants PIERRE A. MAROUN, JOHN DOES #3-5, MAROUN'S INTERNATIONAL, LLC, and JOHN DOES #7-12 published more false and defamatory statements about Saadi to a webpage located at http://www.alcc-research.com/news_articles/Aoun_VS_Maroun.html. True and correct copies of said webpage are attached hereto as Exhibit "G."[1] Said defamatory statements include, but are not limited to, statements which cast Saadi—and the present lawsuit—as somehow associated with terrorism. One statement asserts that Saadi has a "connection to Hezbollah." Defendants also refer to Saadi as "disgraceful," "treacherous," "unethical," "criminal," "sick," "a mobster," and "full of hate, ignorance, and arrogance." Defendants also claim that Saadi—a practicing attorney—is "abusing the legal system." Said webpage makes direct reference to

[1] Said webpage is continually changing and evolving, with new defamatory statements being posted regularly. Exhibit "G" shows various incarnations of said webpage.

Saadi, and also includes, in the midst of said defamatory statements, "hyperlinks" which, when "clicked," point to pleadings and other documents related to this case.[2]

25. On March 20, 2008, Saadi served Jill A. Schuh, Esq., counsel for Defendants PIERRE A. MAROUN and MAROUN'S INTERNATIONAL, LLC with a written notice pursuant to Fla. Stat. Ann 770.01 of the false and defamatory material shown in Exhibit "G" and demanded that said Defendants remove, and publish a retraction of, said statements, but said Defendants failed and refused to remove or retract any of the defamatory material as demanded in the written notice. A copy of Saadi's written notice and demand for retraction is attached as Exhibit "I."

26. On or about November 27, 2008, Defendants published more false and defamatory statements about Saadi (and his father) to a webpage located at http://www.alcc-research.com/news_articles/LebanonReliefInc.html. A true and correct copy of said webpage is attached hereto as Exhibit "J." Said defamatory statements include, but are not limited to, statements claiming that Saadi and his father solicit donations to a "so-called nonprofit," that Saadi and his father "misuse" said donations, that Saadi and his father divert said donations to terrorist groups.

27. In Exhibit "J," Defendants published, alongside the defamatory statements, the private residential address of the Plaintiff's elderly parents, the Plaintiff's office address, and the Plaintiff's private cellular phone number.

---

[2] Specifically, the "hyperlink" shown on Exhibit "G" bearing the text "The Cry Baby's 'I suffered severe emotional distress and emotional injury's' [sic] LAWSUIT_PDF waaa33" points directly to the Amended Complaint in this case. A true and correct copy of the contents of that hyperlink is shown in Exhibit "H." The "hyperlink" shown on Exhibit "G" bearing the text "They say: An Attorney Who Represents Himself Has a Fool for a Client Here's the reply of the attorney/client to our motion to dismiss the frivolous lawsuit. NO COMMENT! Seriously!" points directly to the *Opposition to Defendants' Motion to Dismiss Amended Complaint* in this case.

28. The Defendants have caused the webpage shown in Exhibit "J" to be widely disseminated by, *inter alia*, sending the "link" to an email mailing list with more than 3,600 subscribers in the Lebanese-American community. A true and correct copy of the email sent by the Defendants to said mailing list is attached as Exhibit "K."

29. On January 10, 2009, Saadi served Jill A. Schuh, Esq., and Mark Pena, Esq., counsel for Defendants PIERRE A. MAROUN and MAROUN'S INTERNATIONAL, LLC with a written notice pursuant to Fla. Stat. Ann 770.01 of the false and defamatory material shown in Exhibit "J" and demanded that said Defendants remove, and publish a retraction of, said statements, but said Defendants failed and refused to remove or retract any of the defamatory material as demanded in the written notice. A copy of Saadi's written notice and demand for retraction is attached as Exhibit "L."

30. Since their posting, said false and defamatory statements regarding Saadi have remained available to millions of Internet users, many of whom may have made copies of the false and defamatory statements and/or redistributed them by electronic mail or other means and/or re-posted them on other Web sites, forums, and blogs, and Saadi has no means of removing these false and defamatory statements from the Internet.

31. All conditions precedent to the maintenance of this action have been performed, discharged, waived, or otherwise satisfied.

**COUNT I – DEFAMATION (LIBEL)**

32. Paragraphs 1-31 are hereby re-alleged and incorporated herein by reference.

33. Defendants published false and defamatory statements about Saadi, including those contained in the postings to the Blog and the Forums as shown in Exhibits "A," "B," "C," "D," "E," "G," and "J."

34. The false and defamatory statements published by Defendants regarding Saadi, as reasonably understood, impugn the integrity and competence of Saadi, discredit Saadi's business methods, undermine the confidence of the public and Saadi's clients in Saadi's business, and/or drive away the public and Saadi's clients from using Saadi's services.

35. The false and defamatory statements published by the Defendants, when considered alone, without innuendo, tend to subject Saadi to hatred, distrust, ridicule, contempt, or disgrace, tend to injure Saadi in his trade or profession, and/or attribute to Saadi conduct, characteristics, or conditions incompatible with the proper exercise of a lawful business, trade, profession, or office.

36. The false and defamatory statements published by the Defendants accuse Saadi of having committed, or having participated in the commission of, serious crimes.

37. Defendants owed and owe a duty to Saadi to not publish false and defamatory statements about Saadi. In publishing the false and defamatory statements about Saadi, Defendants breached that duty.

38. In publishing the false and defamatory statements about Saadi, Defendants knew, or in the exercise of reasonable care should have known, that the statements were false.

39. In publishing the false and defamatory statements about Saadi, Defendants acted with malice, actual malice, with knowledge that the statements were false, and/or with reckless disregard for their truth or falsity.

40. As a result of the foregoing publications of false and defamatory statements by Defendants, Saadi has been damaged, including, but not limited to, damage to his reputation, and loss of business, and other damage.

41. In carrying out the foregoing conduct, Defendants acted negligently, willfully, maliciously, and/or with reckless indifference to the consequences of their actions and the rights of Saadi.

WHEREFORE, Saadi demands judgment against Defendants, jointly and severally, for money damages in an amount to be proved at trial but which is in excess of $75,000.00, punitive damages, pre- and post-judgment interest, attorney’s fees, litigation expenses, and costs.

**COUNT II -- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

42. Paragraphs 1-41 are hereby re-alleged and incorporated herein by reference.

43. In 2001, Saadi was the victim of a vicious assault and battery perpetrated by two notorious career criminals in Ohio, both of whom have the last name “Dimuzio.” During said assault, Saadi was “sucker punched” while standing at a urinal, knocked unconscious, repeatedly punched and kicked in the head and torso, left lying in a pool of his blood, and sent to a hospital emergency room.

44. Saadi suffered numerous serious injuries as a result of said crime, including but not limited to a concussion, a broken nose, multiple contusions about his head and body, exotropia, hearing difficulties, and damage to the cervical spine. Said injuries required Saadi to undergo many months of painful medical treatment including but not limited to MRI’s of the head and neck, abdominal CAT scans with intravenous contrast, long-term physical therapy, hearing tests, vestibular balance tests, massotherapy, and chiropractic treatment.

45. Saadi pressed felonious assault charges against both assailants, and was required to testify at numerous pre-trial hearings, parole violation hearings, bond revocation hearings, and at trial. One assailant (Anthony Dimuzio) was convicted of parole violation, and sentenced to 3½ years incarceration. The other assailant (James Dimuzio) was convicted of assault, and received the maximum sentence available under Ohio law for assault—6 months incarceration.

46. As a result of the event described in Paragraphs 39-41, Saadi and his family have a particular sensitivity to threats of physical violence.

47. Defendant PIERRE A. MAROUN was at all relevant times fully aware of the details of the assault and battery against Saadi, including the identities of the assailants, and the extreme stress and distress that it caused to Saadi and his family over several years. Defendant PIERRE A. MAROUN was, at all relevant times, acutely aware of the particular sensitivity of Saadi and his family to such threats.

48. On February 13, 2006, Saadi and his elderly father received from Defendant PIERRE A. MAROUN the email attached hereto as Exhibit "M." In it, MAROUN demanded that Saadi and his father remove certain content—which neither Saadi nor his father had any role in posting—from a particular website over which neither Saadi nor his father have any control. Defendant PIERRE A. MAROUN stated that if his demands were not met, "I will have to deal with you…the street thug's way."

49. Despite being informed that neither Saadi nor his father had anything to do with the subject website, Defendant PIERRE A. MAROUN sent another email on February 13, 2006, attached hereto as Exhibit "N," in which he said, "I advise you to deal with it appropriately before I do."

50. Despite Saadi's efforts to point put Defendant PIERRE A. MAROUN in contact with the appropriate person to help him, MAROUN sent another email on February 13, 2006, attached hereto as Exhibit "O," in which he threatened to inform the IRS that Saadi and others were funding terrorism, which is completely false.

51. The next day, on February 14, 2006, the Defendants posted the statements shown in Exhibits "B" and "C" to the Internet.

52. On February 16, 2006, Defendant PIERRE A. MAROUN sent the email attached hereto as Exhibit "P" to Saadi and his elderly father. In it, he stated, "I will deal with you and whoever is associated with you appropriately…[in] the Dimuzio style." This was an obvious reference to the perpetrators of the previous vicious violent crime against Saadi described in Paragraphs 39-41 which sent Saadi to the hospital, caused severe injury to Saadi, and required Saadi to undergo extensive rehabilitation. It was an explicit threat of physical violence.

53. In making said threat, Defendant PIERRE A. MAROUN intentionally exploited the particular sensitivity of Saadi and his family. Defendant PIERRE A. MAROUN made said threat with the explicit knowledge and understanding of its meaning, and with knowledge and understanding of the impact it would have upon Saadi and his elderly father. Defendant PIERRE A. MAROUN made such threat for the explicit and intentional purpose of inflicting such emotional distress.

54. On March 10, 2006, the Defendants posted the statements shown in Exhibit "A" to the Internet.

55. Defendant PIERRE A. MAROUN was served with Summons and Complaint in this action on February 19, 2008.

56. A few days later, at Defendant PIERRE A. MAROUN's behest, a brother of Defendant PIERRE A. MAROUN who resides near Saadi's residence in Boardman, Ohio began placing telephone calls to Saadi in an effort to get Saadi to withdraw this case. When his effort failed, Saadi was informed that "this is something very dangerous" and that "people can get physically hurt."

57. On or about March 4, 2008, Saadi received a telephone message from Defendant PIERRE A. MAROUN directly, in which MAROUN stated, "I really don't want anybody to get hurt…" and that "I need you to drop this case today, or send me an email promising that you will drop it before Monday." Maroun further stated, "It's a lose-lose situation for you."

58. A few days later, in retribution for Saadi's refusal to withdraw this case, the Defendants posted the website shown in Exhibit "G" to the Internet. Since then, said website has been continuously updated with more and more defamatory statements about Saadi being added regularly up to the present day.

59. In November of 2008, in continuing retribution for Saadi's refusal to withdraw this case, the Defendants posted the website shown in Exhibit "J" to the Internet, in which Defendants published—alongside false and defamatory statements claiming that Saadi and his father solicit charitable funds and divert said funds to terrorism—the private residential address of Saadi's elderly parents. Defendants further disseminated said webpage via email to more than 3.600 people in the Lebanese-American community, as shown in Exhibit "K." Said actions constitute incitement to harassment and violence against Saadi and his elderly parents.

60. The Defendants, by and through the actions described in Paragraphs 1-59, behaved intentionally and recklessly.

61. The Defendants, by and through the actions described in Paragraphs 1-59, intended to cause emotional distress upon Saadi.

62. The Defendants' actions described in Paragraphs 1-59 are so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

63. Saadi suffered severe emotional distress and emotional injury.

64. The actions of Defendants, as aforesaid, were the direct and proximate cause of such severe emotional distress and emotional injury to Saadi.

65. Saadi suffered and continues to suffer mental anguish as a result of the actions of Defendants, as aforesaid, and said mental anguish is of a nature that no reasonable person could be expected to endure.

WHEREFORE, Saadi demands judgment against Defendants, jointly and severally, for money damages in an amount to be proved at trial but which is in excess of $75,000.00, punitive damages, pre- and post-judgment interest, attorney's fees, litigation expenses, and costs.

**COUNT III – PRELIMINARY AND PERMANENT INJUNCTION**

66. Paragraphs 1-65 are hereby re-alleged and incorporated herein by reference.

67. The improper and unlawful conduct of Defendants alleged above is continuing and will continue in the future absent injunctive relief from the Court, and Saadi will continue to be damaged by same.

68. In the absence of the entry of a preliminary and permanent injunction by the Court, Saadi will suffer serious and irreparable harm and injury, including but not limited to damage to his reputation, and loss of business.

69. The entry of a preliminary and permanent injunction will not unduly harm or burden Defendants because they are required as a matter of law to refrain from disseminating defamatory statements regarding Saadi, and to refrain from engaging in the outrageous, intentional, indecent, atrocious, and reckless behaviors described herein.

70. Public policy favors the entry of a preliminary and permanent injunction because, *inter alia*, such relief will prevent unlawful conduct, will preserve and protect Saadi's reputation, and will promote business, thereby encouraging economic prosperity.

71. The aforesaid publications of false and defamatory statements by the Defendants has interfered with and is interfering with Saadi's present and prospective business relationships.

WHEREFORE, Saadi demands the entry of a preliminary and permanent injunction preventing the Defendants from (1) disseminating (via the internet or any other means) any statement regarding Saadi, (2) requiring Defendants to take all steps available and necessary to remove the statements published by Defendants from the internet, and (3) requiring the Defendants to refrain from further engaging in the outrageous, intentional, indecent, atrocious, and reckless conduct described herein.

Dated this 13th day of February, 2009

s/ Edward T. Saadi .
EDWARD TUFIC SAADI
970 Windham Court, Ste 7
Boardman, Ohio 44512
(330) 782-1954
(330) 266-7489 (fax)
EdwardSaadi@aol.com

**JURY DEMAND**

Plaintiff Edward T. Saadi hereby requests a trial by jury.

Dated this 13th day of February, 2009

s/ Edward T. Saadi .

EDWARD TUFIC SAADI
970 Windham Court, Ste 7
Boardman, Ohio 44512
(330) 782-1954
(330) 266-7489 (fax)
EdwardSaadi@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: ___NONE_____________________.

**s/ Edward T. Saadi .**

EDWARD T. SAADI
970 Windham Court, Suite #7
Boardman, Ohio 44512
(330) 782-1954
(330) 266-7489 (fax)
EdwardSaadi@aol.com