# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

EDWARD T. SAADI,

      Plaintiff,

-vs-                                                            Case No. 8:07-cv-1976-T-24-MAP

PIERRE A. MAROUN ET AL.,

      Defendants.
_____/

## ORDER

This cause comes before the Court on the motions for summary judgment filed by Defendants Pierre A. Maroun ("Maroun") and Maroun's International, LLC ("International") against Plaintiff, and Plaintiff's motions for partial summary judgment against each Defendant. Each party has filed a response in opposition to the motion(s) against it.

## INTRODUCTION

Plaintiff, Edward T. Saadi, filed suit against Defendants for posting negative statements about him on Internet blogs[1] and forums,[2] and for otherwise harassing and threatening him. In his three-count Fourth Amended Complaint (Doc. 87), Plaintiff asserts claims for (1) libel, (2) intentional infliction of emotional distress, and (3) injunction against further acts of libel or intentional infliction of emotional distress and the removal from the Internet of all libelous statements. Defendant International moves for summary judgment on the ground that Plaintiff

---

[1] Blogs are on-line diary postings, allowing the authors—or, "bloggers"—to post their comments for viewing by other Internet users.

[2] Forums are on-line discussion sites that allow viewers to read and respond to each other's postings.

has failed to show that it is the alter ego of Defendant Maroun, and there is no other basis on which it can be held liable. (Doc. 99.) Defendant Maroun moves for summary judgment on the grounds that: (1) Plaintiff cannot establish Defendants' authorship of the negative statements; (2) the statements made about Plaintiff are not libelous; (3) even if the statements would otherwise be libelous, they are protected political opinion essays; and (4) Defendant Maroun's conduct was not so extreme or outrageous as to constitute intentional infliction of emotional distress. (Doc. 101.) Plaintiff opposes the motions (Docs. 109, 110) and moves for summary judgment with regard to liability on his claim of libel against both Defendants (Docs. 120, 121). For the issues argued identically in Defendants' motions to dismiss, the Court reasons identically in resolving them.

## **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.* When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.*

## BACKGROUND

Plaintiff graduated law school from Georgetown University and is now a practicing attorney in Ohio. (Doc. 87, p. 5.) Defendant Maroun is his cousin. Defendant International was founded by Defendant Maroun, the sole employee of the company. Approximately two years ago, Defendant Maroun allegedly began posting negative comments about Plaintiff on the Internet. (Doc. 87.) Although Plaintiff does not directly allege that postings were made by Defendant International, Plaintiff claims that Defendant International is an alter ego of Defendant Maroun, established for the single purpose of protecting Defendant Maroun's assets from the present action. (*Id.* at 4.)

The postings at issue appear on:

(1) a blog, located at http://biggestloosers.blogspot.com, which declares "OUR STORIES ARE TRUE" (Pl.'s Exs. A, B, C);

(2) two forums: "Lebanese Forces Official Forum," located at www.lebforces.org (Pl.'s Ex. E), and "President Bachir Gemayel Official Forum," located at www.bachirgemayel.org (Pl.'s Ex. D); and

(3) the website for the American-Lebanese Coordination Council, located at www.alcc.com (Pl's Exs. G, J), a website admittedly run by Defendant Maroun who is the only publisher of information on the site (Doc. 138, 139).

The latter three sites, in part, encourage discussion of the political events in Lebanon. The postings contain statements that Plaintiff:

(1) is a "stalker," is "mentally unstable," and "claims to have a law degree but never worked or tried a case" (Pl.'s Ex. A);

(2) received a car from Former Prime Minster of Lebanon Michael Aoun, paid for with money stolen by Prime Minister Aoun from the Lebanese people, and that Plaintiff left Lebanese people to be slaughtered. The author claims these statements were confirmed "after some thorough investigations" (Pl.'s Exs. B, D, E);

(3) has a highschool girlfriend who recently turned 18, "so it's legal now" (Pl.'s Ex. C);

(4) is involved in "criminal misdeeds" and "criminal activities," and is "unethical" and involved in the "Hezbollah war of terror" (Pl.'s Ex. G); and

(5) misuses funds generated by his "so-called non-profit" by diverting the funds to terrorist groups and threatening national security (Pl.'s Ex. J).

Plaintiff alleges that Defendants knew or should have known that all of these allegations are false (Doc. 153), and that, as a result of Defendants' behavior, Plaintiff's reputation and business have suffered. (*See* Fadel Depo., pp. 20, 22; Kukielka Depo., pp. 20–21; Smuckler Depo., p. 19.)

In addition to these postings, Defendant Maroun has allegedly threatened Plaintiff and his 75 year-old father, both verbally and in writing, and has disseminated Plaintiff's private phone number and address as well as the address of his elderly parents next to assertions that Plaintiff and his father have diverted charitable donations to terrorism. (Doc. 87, pp. 13–14; Pl.'s Ex. J.) Defendants, knowing that Plaintiff was severely beaten and sent to the hospital in 2006 by two men with the last name Dumizio, sent multiple messages via email and telephone, both personally and through agents, threatening violence against Plaintiff and his parents if, for example, Plaintiff did not drop the present lawsuit. (*See* Doc. 87, pp. 13–14; Doc. 126; Doc. 155.) These messages threatened to "deal with [Plaintiff]" and whomever is associated with him "Dumizio style." (Pl.'s Ex. P.) Plaintiff claims that these threats were made expressly to cause him emotional distress.

**DISCUSSION**

A. Defendants as Alter Egos

Defendant International claims that there is no proof that it is the alter ego of Defendant Maroun, and no evidence otherwise implicating Defendant International in the suit. Plaintiff avers that Defendant International was formed for the sole purpose of protecting Defendant Maroun's assets from liability in the present suit. The undisputed evidence demonstrates that Defendant Maroun is the sole founder, member, and agent of Defendant International. Further, Defendant Maroun admits that he is the only person able to post information on the ALCC website where allegedly-defamatory statements appear and on which Defendant International's copyright symbol was posted. However, Defendant International and Defendant Maroun deny that they are alter egos. They aver that Defendant International is a business involved in providing translations, contracts, research, and analysis for international businesses. (Maroun Tr., pp. 5–6.) No further evidence of Defendant International's separate business practices has been submitted. This contradictory evidence creates a genuine issue of material fact as to whether Defendants are alter egos.

In addition, regardless of whether the two are alter egos, an employer can be held liable for defamation or international infliction of emotional distress committed by its employees in the scope of their employer's apparent authority, even if their acts did not serve the employer's interest. *Canto v. J.B. Ivey & Co.*, 595 So. 2d 1025, 1028 (Fla. 1st DCA 1992). Here, the presence of Defendant International's copyright symbol on a website solely operated by Defendant Maroun, which hosts the controversial postings and which disseminated the personal addresses and phone numbers for Plaintiff and Plaintiff's elderly parents, creates a triable issue

of fact as to whether Defendant Maroun's postings on the ALCC website were made within the scope of Defendant International's apparent authority.

### B. Authorship of Statements

Next, Defendant Maroun claims that Plaintiff has failed to demonstrate a triable issue of fact as to whether he authored the majority of the allegedly-libelous Internet statements.[3] Defendant Maroun admits, however, that he authored all of the postings on the ALCC website, and thus, the Court finds that, as a matter of law, Defendant Maroun is the author of Exhibits G and J. As to the other postings, Plaintiff has submitted a voice message, which Plaintiff avers was left by Defendant Maroun, stating that Defendant Maroun had removed the postings from the Internet. Plaintiff notes that the creator of blog postings has the power to remove the material. Further, Plaintiff has used an expert to analyze the origin of the various postings, based on information provided by Yahoo! and Google about them, and the expert's conclusions were consistent with Plaintiff's allegations. (*See* Plante Decl.) The Court finds that this evidence is sufficient to create a genuine issue of material fact as to Defendant Maroun's authorship of the statements.

### C. Libelous Nature of the Speech

In a suit for defamation, a private plaintiff must allege (1) publication of false statements about the plaintiff that "expose[ ] [him] to distrust, hatred, contempt, ridicule or obloquy or which cause [him] to be avoided, or which [have] a tendency to injure [him] in his office,

---

[3] Defendant International states that Defendant Maroun is the only person alleged to have authored the statements, and without a showing that Defendant International is Maroun's alter ego, there is nothing in the record to tie Defendant International to the postings. Because the Court has found a triable issue of fact as to the alter ego issue, the analysis of Defendant International's authorship parallels that of Defendant Maroun's.

occupation, business or employment," *Cooper v. Miami Herald*, 31 So. 2d 382, 384 (Fla. 1947); (2) done without reasonable care as to the truth or falsity of those statements; and (3) that result in damage to that person. *Hay v. Independent Newspapers, Inc.*, 450 So. 2d 293, 294–95 (Fla. 2d DCA 1984). Libel is "the publication of defamatory matter by written or printed words." *Rapp v. Jews for Jesus, Inc.*, 944 So. 2d 460, 465 (Fla. 4th DCA 2006) (quoting Restatement (Second) of Torts § 568 (1) (1965)). Statements are libelous per se if they impute to someone a felonious act. *Silvester v. Am. Broadcasting Cos.*, 650 F. Supp 766, 771 (S.D. Fla. 1986). It is for the Court to decide whether a statement is reasonably capable of a defamatory interpretation. *Id.* at 770.

Statements that Plaintiff is "mentally unstable," "unethical," misuses funds solicited for his non-profit organization, and "claims to have a law degree but never worked or tried a case," can certainly be interpreted as having a tendency to injure him in his occupation, business, or employment. Plaintiff and Defendants have submitted affidavits disputing the care taken in investigating these claims prior to their publication. Further, Plaintiff has shown that potential clients and other attorneys were wary of Plaintiff's professional services after seeing the posts. This is sufficient to create a triable issue of fact as to whether these statements were libelous.

Further, statements that Plaintiff is a "stalker," was given gifts purchased with stolen funds, committed statutory rape, is involved in "criminal misdeeds," "criminal activities," and the "Hezbollah war of terror," misuses charitable funds, and is a threat to national security are reasonably interpreted as assertions that Plaintiff has committed felonious acts. Plaintiff and Defendants have submitted affidavits disputing the care taken by Defendants in investigating

these claims prior publishing them, and thus, there is a triable issue of fact as to whether these statements are libelous per se.

Finally, Defendant Maroun claims that Plaintiff has not created a triable issue of fact as to whether Exhibits G and J—which the Court has found, as a matter of law, were authored by Defendant Maroun—constitute libel against Plaintiff, since Defendant Maroun claims that the statements contained therein are not about Plaintiff at all, but about followers of Mr. Aoun. The Court finds, however, that the references to Plaintiff in Exhibits G and J are clear. The postings describe Mr. Aoun's followers as those filing the present lawsuit and include links with titles such as "The Cry Baby's . . . Lawsuit . . . waaa33,"[4] which lead to copies of court documents from this case. The "updates" made to the postings make clear that the relevant statements concerned Plaintiff, as the updates refer specifically and uniquely to Plaintiff as the "transgressor" whose behavior inspired the initial writings. Thus, Defendant Maroun's protest does not extinguish the triable issue of fact as to whether the statements defame Plaintiff.

### D. Political Opinion Essays

Defendant Maroun next claims that the opinionative nature of the postings protect him from liability. Although expressions of opinion cannot constitute defamation, statements that mix fact and opinion do not enjoy the same absolute protection. *Johnson v. Clark*, 484 F.Supp. 2d 1242, 1247 (M.D. Fla. 2007). A statement purports to be fact if, rather than commenting on information available to the reader, it implies the existence of undisclosed defamatory facts as its

---

[4]While the characterization of Plaintiff as a "Cry Baby" is not libelous, the Court directs Defendant Maroun to the laudatory example set by popular R&B singer Beyonce Knowles who, despite provocation, is "not gon' diss [her detractor] on the Internet 'cause [her] Mama taught [her] better than that." *See* Destiny's Child, *Survivor*, *on* Survivor (Columbia Records 2001).

basis. *Id.* If a statement mixes opinion and fact, it is defamatory if its reasonable interpretation, in context, is defamatory. *Rapp*, 944 So. 2d at 466–67. The Court decides, as a question of law, whether a statement is one of opinion, fact, or both, and whether the statement is "susceptible [to] defamatory interpretation." *Johnson*, 484 F. Supp. 2d at 1247.

Statements that Plaintiff is a mentally unstable stalker, a criminal, that Plaintiff falsely purports to have a law degree, that he misuses charitable funds, and that he has received gifts paid for with money stolen from the Lebanese government, as well as statements that suggest that Plaintiff has committed statutory rape, imply factual knowledge. They are not merely subjective commentary or mere characterizations of publically-available information. The author of the postings, at times, even combines the statements with claims that the information was the result of "thorough investigation." Certainly the postings and context in which they were made suggest that the information is based on facts showing that Plaintiff is involved in criminal, immoral, and unprofessional behavior. Thus, the statements assert facts that can reasonably be construed as defamatory.

Next, Defendant Maroun claims the statements are protected speech, because they are posted on sites designed to foment the discussion of political issues. Political speech and debate about public questions are protected fiercely in the American ethos. *Gibson v. Maloney*, 231 So. 2d 823, 825–26 (Fla. 1970). Thus, political statements are protected when made in good faith. *Abraham v. Baldwin*, 52 Fla. 151, 156 (1906). However, political sites are not asylums for gratuitous libel. To allow people to post libel freely on any site that coins itself "political" would be to allow landscapes of political discourse to shelter, or rather, incubate, libel. Political

surroundings do not, by themselves, transform otherwise-libelous speech into political commentary, nor do they shield such speech from legal action.

The statements levied against Plaintiff were made primarily about his personal and professional life and were, for the most part, entirely unrelated to matters of public concern. Thus, posting the comments on politically-related sites does not immunize the postings from suit. Further, Plaintiff alleges that these comments were made maliciously, and therefore would not fall within "fair comment" protection, even if they were made about matters of public concern. The Court finds that most of the comments posted were not of a political nature and, accordingly, the claim of political protection fails entirely. And, as to the comments made connecting Plaintiff to notorious political figures and goings-on, the Court finds a genuine issue of material fact as to whether the statements were made in bad faith.

### E. Extreme and Outrageous Behavior

Finally, to establish a claim for intentional infliction of emotional distress, Plaintiff must allege "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rapp*, 944 So. 2d at 466 (quotation omitted). Further, the outrageous conduct must have been the vehicle for deliberate or reckless infliction of severe suffering. *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985). Physical contact or severely threatening behavior to a plaintiff or his family can found a claim for intentional infliction of emotional distress. *See, e.g., Nims v. Harrison*, 768 So. 2d 1198, 1201 (Fla. 1st DCA 2000). Whether behavior meets the severe standard required to establish a claim for intentional infliction of emotional distress is question of law. *Rapp*, 944 So. 2d at 466; *Baker v. Florida*

*Nat'l. Bank*, 559 So. 2d 284, 287 (Fla. 4th DCA 1990) ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.") (quotation omitted).

Plaintiff alleges that Defendant Maroun, personally and through his agents, threatened Plaintiff and his elderly father with physical harm and that Plaintiff suffered severe anxiety and distress as a result. According to Plaintiff, Defendant Maroun generally threatened, "physical harm," and specifically threatened to reenact the brutal assault Plaintiff experienced at the hands of his convicted attackers, the Dumizios. Defendant Maroun's threats were combined with the publication of Plaintiff's and his elderly father's personal addresses and telephone calls to Plaintiff's personal phone number. The Court finds that the evidence submitted to support Plaintiff's claim creates a genuine issue of material fact as to whether such behavior occurred and whether the behavior constituted intentional infliction of emotional distress.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's motion for summary judgment as to Defendant Maroun's authorship of Exhibits G and J is GRANTED. All of the parties' motions for summary judgment in all other respects are DENIED.

**DONE AND ORDERED** at Tampa, Florida, this 20th day of May, 2009.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record