**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| EDWARD T. SAADI,<br><br>Plaintiff,<br><br>v.<br><br>PIERRE A. MAROUN, et al.,<br><br>Defendants | ) | CASE NO.: 07-CV-01976-SCB-MAP<br><br>Judge Susan C. Bucklew<br>Mag. Mark A. Pizzo<br><br>**AMENDED MOTION FOR PERMANENT INJUNCTION** |

## AMENDED MOTION FOR PERMANENT INJUNCTION

NOW COMES Plaintiff EDWARD T. SAADI ("Saadi") and hereby moves this Court for a permanent injunction requiring Defendant Pierre A. Maroun ("Maroun") to (1) permanently remove from the Internet the websites shown in Trial Exhibits 19 and 20 and (2) permanently refrain from repeating, re-posting, republishing, or disseminating any of the statements shown in Trial Exhibits 16, 17, 18, 19, and/or 20.

In support of this motion, Saadi states as follows:

1. The Fourth Amended Complaint in this matter sought redress for Maroun's publication to the Internet of the statements shown in Trial Exhibits 16, 17, 18, 19, and 20.
2. This matter proceeded to a jury trial on September 29 through October 1, 2009, which concluded with a jury verdict in Saadi's favor on all counts. Specifically, the jury determined (1) that the statements in all such Trial Exhibits identify and pertain to Saadi, (2) that all such statements had a defamatory effect on Saadi, (3) that all such statements were published by Pierre A. Maroun, (4) that all such statements were the legal cause of injury to Saadi, and (5) that all such statements were false and not made with good motive.

3. Absent entry of a permanent injunction, Saadi would suffer serious and irreparable harm and injury, including continuing damage to his reputation and loss of business.

4. Having proved that Maroun's statements are false and defamatory, and were made without good motive, Saadi is entitled to a permanent injunction requiring Maroun to remove all such statements from the Internet, and forbidding him from repeating, re-posting, republishing, or disseminating said statements in the future.

## MEMORANDUM IN SUPPORT

### I. THE CASES CITED BY THE COURT DURING TRIAL ON OCTOBER 1, 2009 ARE NOT ON POINT.

On October 1, 2009, during the trial of this matter, the Court expressed uncertainty as to whether it has the power to issue an injunction in a libel case. The Court made reference to four cases in particular as the source of that uncertainty: (1) United Sanitation Services of Hillsborough, Inc. v. City of Tampa, 302 So.2d 435 (Fla. 2nd DCA 1974); (2) Rodriguez v. RAM Systems, 466 So.2d 412 (3rd DCA 1985); (3) Weiss v. Weiss, 5 So.3d 758 (Fla. 5th DCA 2009); and (4) Demby v. English, 667 So.2d 350 (Fla. 5th DCA 1996). A close reading of those cases reveals that none of them are on point. All of the cases cited by the Court involved ***prior restraints*** on speech; in contrast to the instant case, they involved injunctions (or requests for injunctions) pertaining to statements which had not yet been determined by a jury to be defamatory and false.

The United Sanitation case, for example, was a classic "prior restraint" case. The trial court denied the plaintiff's application for a *temporary restraining order*, and the appeals court upheld the denial. No determination was made by any jury on the issue of whether the at-issue statements in United Sanitation were false or defamatory. 302 So.2d 435 (Fla. 2nd DCA 1974).

Rodriguez was also a prior restraint case. It concerned a *preliminary* injunction. The plaintiff's motion for a preliminary injunction was granted by the trial court; on appeal, the preliminary injunction was reversed. No jury determination of the false and defamatory nature of the speech was made. 466 So.2d 412 (Fla. 3rd DCA 1985).

Weiss was a dissolution proceeding. The wife in that proceeding had published to a website allegations that her former attorney stole money from her. That attorney—who was not even a party to the case—made a verbal motion to the trial court for an order forbidding her from publishing such allegations to her website. The court granted the motion, and ordered the wife to refrain from such publication. The appeals court reversed on the grounds that the trial court's order was "outside the jurisdiction of the dissolution proceeding…before the court...[A] trial court may not entertain injunctive relief *sua sponte* in the absence of the required pleadings and notice." 5 So.3d 758 (Fla. 5th DCA 2009). Thus, the injunction issued in Weiss was overturned because (1) it was a dissolution proceeding and the injunction was outside the scope of the pleadings, and (2) because it was a *prior restraint*.

Demby is likewise inapposite. In Demby, the plaintiff brought, and then voluntarily dismissed, a libel suit. The defendant then made a motion for attorney's fees. The court determined that the at-issue statements were privileged and non-actionable, and that the defendant was therefore entitled to attorney's fees. 667 So.2d 350 (Fla. 5th DCA 1996). Because the statements were not actionable, no injunction could possibly have issued in Demby. Therefore, any statements in Demby on that subject are mere dicta.

None of these cases examined injunctions requested by plaintiffs *who had prevailed at trial*; none of these cases evaluated injunctions pertaining to statements which were *determined*

*by a jury* to be false, defamatory, and injurious. Rather, all of the cases[1] pertained to injunctions, or requests for injunctions, which *undeniably* constituted prior restraint on speech.[2] In contrast, in this case, a jury has examined the subject statements, and has found that all of them are false, defamatory, and injurious to Saadi. The injunction requested by Saadi herein is not a prior restraint on speech; it is, rather, a *subsequent* restraint which is being requested only after Maroun was provided a full and fair opportunity at trial to defend the statements, and failed on all counts in doing so.

## II. THE COURT HAS THE POWER TO ISSUE AN INJUNCTION IN THIS CASE.

Florida precedent contains a dearth of precedent in which a plaintiff made a *post-trial* motion for an injunction forbidding the repetition of statements determined by a jury at trial to be false and defamatory. Saadi has located only one published case, Wynn Oil Company v. Purolator Chemical Corporation, which originated from the Middle District of Florida and was appealed to the 5th Circuit Court of Appeals prior to the creation of the 11th Circuit. Wynn held that injunctive relief is in some cases available as a remedy in defamation cases. 536 F.2d 84 (5th Cir. 1976). The Wynn court stated that "Generally, slander affords a remedy at law with entitlement to a jury. If however, an action at law would not be a complete, prompt and efficient remedy, an injunction may issue." Also, an unpublished Florida decision reasoned that the issuance of an injunction prohibiting further dissemination of defamatory statements was proper after entry of default; that court ordered the defaulted defendants to remove the complained-of

---

[1] With the exception of Demby, which was dismissed voluntarily before any injunctive issues were raised.

[2] Moreover, Saadi respectfully points out to the Court that not all Florida decisions which have examined preliminary injunctions restraining libel have disapproved of said injunctions. In Shevin v. Thuotte, 339 So.2d 253, 254 (Fla. 2nd DCA 1976), the court examined and *approved* a preliminary injunction which "enjoined and prohibited from disseminating defamatory literature, comments and remarks, and press releases concerning the Defendants."

statements from their website and to refrain from repeating them. Universal Communications Systems, Inc. v. Dembovich, Case No. 04-27383-CA-01, Eleventh Judicial Circuit, Miami-Dade County (attached hereto as Exhibit "A").

Thus, the issue of whether a Court can enter a post-trial injunction prohibiting the repetition of statements determined during trial to be libelous may be one of first impression in Florida. But despite the dearth of Florida precedent on point, a court's power to restrain publication of libelous statements *following a trial* is deeply rooted in Anglo-American jurisprudence. Courts have, for centuries, issued such post-trial injunctions, and they have been repeatedly upheld by courts of appeal.

As far back as 1878, Lord Coleridge, writing for the English Court of Common Pleas, stated, "I can well understand a court of Equity declining to interfere to restrain the publication of that which has not been found by a jury to be libelous. Here, however, the jury have found the matter complained of to be libelous." Saxby v. Easterbrook, 3 C.P.D. 339. Similarly, in 1892 a Missouri court held "[a]fter verdict in favor of the plaintiffs, they can have an injunction to restrain any further publication of that which the jury has found to be an actionable libel or slander." Flint v. Hutchinson Smoke-Burner Co., 110 Mo. 492.

More recently, the Georgia Supreme Court upheld an injunction issued following a jury trial in a libel case that prohibited the repetition of the statements found to be defamatory. Retail Credit Company v. Russell, 234 Ga. 765 (1975)(the court reasoned that at trial "an adequate determination [was made] that [the statements are] unprotected by the First Amendment...and based on a continuing course of repetitive conduct.") Likewise, the Ohio Supreme Court upheld a complaint that sought injunctive relief to prohibit the defendant from repeating statements after those statements were proven at trial to be defamatory. O'Brien v. University Community

Tenants Union, Inc., 42 Ohio St.2d 242, 245 (1975). Courts in Minnesota and Nebraska have reached identical conclusions. Advanced Training Systems, Inc. v. Caswell Equipment Co., Inc., 352 N.W.2d 1 (Minn. 1984)("[C]ourts have upheld the suppression of libel, so long as the suppression is limited to the precise statements found libelous after a full and fair adversary proceeding."); Sid Dillon Chevrolet-Oldsmobile-Pontiac, Inc. v. Sullivan, 559 N.W.2d 740, 747 (1997)(Nebraska Supreme Court acknowledged the "general rule" that "equity will not enjoin a libel or slander" but concluded that the rule does not apply to post-trial injunctions prohibiting speech that has been adjudicated as unlawful).

Similarly, two judges of a three-judge panel of the United States Appeals Court for the Sixth Circuit held, in a libel case involving frequent and continuing defamatory statements, that an injunction could be issued to prevent future injury to the plaintiff's reputation. Lothschuetz v. Carpenter, 898 F.2d 1200 (6th Cir. 1990).

In a landmark 2007 case, the California Supreme Court examined an injunction, issued after a defamation jury trial, which barred the defendant from repeating the statements found by the jury to be defamatory. Balboa Island Village Inn, Inc. v. Lemen, 40 Cal. 4th 1141 (2007). The Court held that "an injunction issued following a trial that determined that the defendant defamed the plaintiff that does no more than prohibit the defendant from repeating the defamation, is not a prior restraint and does not offend the First Amendment." Id. at 1145.

The central theory of the California Supreme Court in Balboa was that there "is a fundamental equitable and constitutional divide that distinguishes preventing a person from speaking or publishing something that, allegedly *would constitute a libel if spoken or published*, and issuing '*a post-trial injunction after a statement that already has been uttered has been found to constitute defamation.*'" *Smolla*, Law of Defamation, 2d. Ed., §9:88, quoting Balboa,

40 Cal. 4th at 1150 (emphasis added). The Balboa court reasoned that "Prohibiting a person from making a statement or publishing a writing before that statement is spoken or the writing is published is far different from prohibiting a defendant from repeating a statement or republishing a writing that has been determined at trial to be defamatory and, thus, unlawful. This distinction is hardly novel." Id.

The Balboa court dismissed the aphorism that "equity will not enjoin a libel," as an *inaccurate description of the history of common law* and *unsound as a matter of public policy*. Id. at 1156-58. The Court persisted in its distinction between "requests for *preventive relief prior to trial* and post-trial remedies *to prevent repetition of statements judicially determined to be defamatory*." Id. at 1159 (emphasis added). To accept the argument that the sole remedy for defamation is an action for damages, the court reasoned, "would mean that a defendant harmed by a continuing pattern of defamation would be required to bring a succession of lawsuits if an award of damages was insufficient to deter the defendant from continuing the tortious behavior." Id. The court reasoned that if a defendant is either so impecunious as to be "judgment proof" or so wealthy as to be willing to pay any resulting judgments, the plaintiff is left with only the frustration of never-ending litigation. Id.

The history of common law reveals that this Court does indeed have the power to enjoin the future repetition and dissemination of statements which have been determined by a jury to be false, defamatory, and injurious. This is particularly true in cases where (as here) the defendant's behavior has been repetitive,[3] and where (as here) the defendant is impecunious.[4] The leading treatise on defamation law aptly states as follows:

---

[3] Testimony at trial revealed that Maroun's campaign of libel against Saadi began in February of 2006, included the publication of five different websites with dozens of libelous statements, and still continues to the present day. As this is being written, the websites shown in Trial Exhibits 19 and 20 are *still posted to the Internet*. See http://www.alcc-research.com/news_articles/LebanonReliefInc.html and http://www.alcc-research.com/news_articles/Aoun_VS_Maroun.html.

> "Equity jurisprudence has abandoned the archaic notion that equity will protect only property and not personal rights; courts of equity today routinely issue injunctions to protect personal rights…The idea that damages are an adequate remedy at law begs the essential question—a convincing case can in fact be made that defamation is precisely the form of nonquantifiable injury for which damages are ill-suited, and that equitable relief would prevent reputational damage that might never be truly restored by money."

*Smolla*, Law of Defamation, 2d. Ed., §9:87. Even the Restatement (2d) of Torts suggests that injunctive relief is proper "[w]hen it has been formally determined by a court that a statement is both defamatory and untrue and the defendant persists in continuing to publish it..."

In this case, Maroun's behavior has been repetitive; it has lasted more than 3½ years, and continues to this day. He is impecunious and unable to pay the judgment rendered by the jury against him. It was been formally determined at trial all of his statements are both defamatory and untrue. And, Maroun persists in continuing to publish said statements. The permanent injunction requested by Saadi should issue; it is the only adequate available remedy to prevent continuing and irreparable injury to Saadi.

## III. EVEN IF THIS COURT DOES NOT HAVE THE POWER TO ISSUE AN INJUNCTION TO PROTECT SAADI'S PERSONAL RIGHTS, IT UNDOUBTEDLY HAS THE POWER TO ISSUE AN INJUNCTION TO PROTECT SAADI'S BUSINESS INTERESTS.

Even if this Court concludes, despite the jury's verdict and the above-cited precedent, that it does not have the power to issue an injunction to protect Saadi's personal reputation, then it undoubtedly has the power to issue an injunction to protect the Saadi's business interests. Thus, even if the Court disagrees with Saadi's characterization of the state of the common law as argued above, it should nevertheless issue the requested injunction.

---

[4] Maroun testified at trial that he earns a mere $20,000.00 per year, which is hardly adequate to pay the $90,000.00 judgment imposed upon him by the jury.

Florida law is clear that courts have the ability to issue injunctions that bar defendants from using tortious speech to interfere with a plaintiff's business interests. In fact, Florida courts have the ability to issue such injunctions *prior* to trial. DeRitis v. AHZ Corp., 444 So.2d 93, 94 (Fla. 4th DCA 1984)(temporary injunction is proper remedy to prevent purchasers of condominium from interfering, via speech, with plaintiff's present or prospective business relationships); See also Azar v. Lehigh Corp., 364 So.2d 860 (Fla. 2nd DCA 1978).

Even the cases cited by the Court verbally on October 1, 2009 acknowledge that the general rule that equity is inappropriate to restrain defamation applies *only* where no "independent ground" exist for equitable jurisdiction.[5] See Rodriguez, supra, 466 So.2d at 412 ("***In the absence of some other independent ground for the invocation of equitable jurisdiction***, injunctive relief is unavailable…to restrain…defamation")(emphasis added); Weiss, supra, 5 So.3d at 758 ("In the absence of some other independent ground…") Damage to a plaintiff's business interests is precisely such an "independent ground."

In this case, uncontroverted testimony was presented at trial that Maroun's tortious speech is interfering with Saadi's business interests. In fact, some of Maroun's statement suggested that Saadi was not an attorney at all. Trial testimony established that at least one of Saadi's potential clients was "shocked" when he read Maroun's statements, and decided not to hire Saadi based upon such statements. See *Testimony of Miroslaw Kukielka*. Kerri Capone testified that her co-workers who were looking for an attorney found Maroun's statements on the Internet. Eddie Fadel testified that Maroun's statements were disseminated to more than 3,661 people, many of whom are attorneys and business people from the Lebanese-American

---

[5] As discussed above, all of the cases cited by the Court pertained to prior restraints rather than post-trial injunctions, and are inapplicable to this case for that reason. Moreover, one court which examined a preliminary injunction restraining libel approved it. Shevin v. Thuotte, 339 So.2d 253, 254 (Fla. 2nd DCA 1976).

community—obviously potential sources of business for Saadi. The deposition of Howard Smukler (though excluded from trial by an order in limine) established that Maroun's statements had a severely negative impact on the view of Saadi's professional colleagues as to his abilities as an attorney, and their willingness to refer cases to Saadi in the future. Smukler even attempted to call Saadi's law school alma mater in order to verify that he was, in fact, a graduate. *Deposition of Howard Smukler* [*Document #113*] 19:2-22:8.

## IV. CONCLUSION

For all of the foregoing reasons, this Court should issue the permanent injunction requested by Plaintiff Edward T. Saadi.

Dated this 14th day of October, 2009

**s/ Edward T. Saadi** .
EDWARD T. SAADI
970 Windham Court, Suite #7
Boardman, Ohio 44512
(330) 782-1954; (330) 266-7489 (fax)
EdwardSaadi@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: ____NONE_____________________.

**s/ Edward T. Saadi** .
EDWARD T. SAADI
970 Windham Court, Suite #7
Boardman, Ohio 44512
(330) 782-1954
(330) 266-7489 (fax)
EdwardSaadi@aol.com