IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD T. SAADI, an Individual,
     Plaintiff,

v.

PIERRE A. MAROUN, aka "Losers," an
individual, HALA FAKHRE MAROUN aka
HALA MAROUN aka HALA FAKHRE aka
"Losers," an individual, JOHN DOE #3, aka
"Bashir4Ever," an individual whose name is
presently unknown, JOHN DOE #4, aka
"Bush," an individual whose name is presently
unknown, JOHN DOE #5, aka "b2a3kafra," an
individual whose name is presently unknown,
and JOHN DOES #6-12, individuals,
corporations, organizations, or other legal
entities whose names are presently unknown,
     Defendants.

Case No.: 8:07-CV-01976-SCB-MAP

**DEFENDANT PIERRE MAROUN'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, RENEWED MOTION TO DISMISS AND MOTION TO AMEND OR ALTER JUDGMENT OR MOTION FOR NEW TRIAL**

COMES NOW Defendant Pierre A. Maroun, by and through his undersigned attorneys, and files this Renewed Motion For Judgment As A Matter of Law pursuant to F. R. Civ. P. 50(b), Renewed Motion To Dismiss for lack of subject matter jurisdiction pursuant to F. R. Civ. P. 12(b)(1) and 12(h)(3), and Motion To Amend Or Alter Judgment Or Motion For New Trial pursuant to F. R. Civ. P. 59, and in support thereof states as follows:

1.     A Jury Trial was held in this cause from September 29 through October 1, 2009.

2.     During the Jury Trial, this Court admitted exhibits and evidence introduced by the Plaintiff over the Defendant's objections.

3.      At the end of Plaintiff's case, this Court directed a verdict in favor of Defendants Pierre A. Maroun and Maroun's International, LLC on the claim for Intentional Infliction of Emotional Distress.  At the conclusion of the presentation of all evidence, this Court directed a verdict in favor of Defendant Maroun's International, LLC on all remaining counts.

4.      The jury deliberated for approximately two hours on the sole issue of libel against Defendant Pierre A. Maroun.

5.      The jury's verdict in favor of the Plaintiff and the jury's award of damages should be set aside, because the jury was allowed to consider evidence that should not have been admitted under the Federal Rules of Evidence.

6.      Specifically, the jury was shown altered portions of websites, in Exhibits 16, 17, and 18 that were prepared by Plaintiff, without requiring Plaintiff to properly authenticate said documents.  The Defendants' objected and cited case law on point, but exhibits were admitted into evidence over the Defendants' objections.

7.      Additionally, over the Defendants' objections, extensive evidence of compromise and offers to compromise were admitted into evidence, in the form of live testimony from Plaintiff, Defendant Pierre Maroun and witness Antoine Maroun, and in the form of two voice recordings left on Plaintiff's voice mail in late February 2008.

8.      The testimony and voice recordings pertained to a series of conversations that occurred in late February 2008 between Plaintiff, Defendant Pierre Maroun and the Defendant's brother, Antoine Maroun, concerning an agreement about the actions that Plaintiff was requiring the Defendant to take in order to dismiss the lawsuit.

9.      The admission of evidence about this series of conversations, although entirely circumstantial, was the only compelling evidence Plaintiff had as to Defendant Pierre Maroun's

2

liability for posting the anonymous statements contained in Exhibits 16, 17, 18 and 21.  The admission of this evidence of compromise and offers to compromise to prove the Defendant's liability violates F. R. Civ. P. 408, and, according to the case law presented at trial constitutes reversible error.

10.    Defendants previously argued to this Court that this case should be dismissed for lack of subject matter jurisdiction (see doc. 167).  The Court denied the motion prior to trial and during the trial and allowed the jury to deliberate on the count of libel against Defendant Pierre Maroun, because the Court opined that it is possible that the jury could award Plaintiff damages exceeding $75,000 for his emotional and mental pain and suffering.

11.    Federal Rule of Civil Procedure 12(h)(3) states that "[i]f the court determines at any time that it lacks subject-matter-jurisdiction, the court must dismiss the action."

12.    The jury did not award Plaintiff any damages for injury to reputation or health, nor any damages for shame, humiliation, mental anguish, and hurt feelings.  The jury did not award the Plaintiff any damages for impairment of business, social, religious, or family relationships.  The jury did not award the Plaintiff any damages for aggravation of an existing disease or physical defect resulting from such statements.

13.    At trial, Plaintiff failed to prove actual or consequential damages exceeding or even approaching $75,000.  In fact, the jury awarded Plaintiff only $30,000 in compensatory damages and $60,000 in punitive damages.  Therefore, jurisdiction in this Court was never proper, and this case should be dismissed with prejudice for lack of subject matter jurisdiction.

14.    The jury's award of compensatory damages was not reasonably based on the evidence presented at trial, and the jury's award of punitive damages does not comport with the law or with the jury instructions.  Therefore, pursuant to F. R. Civ. P. 59, the Final Judgment in

this case should be altered or amended or, in the alternative, a new trial should be ordered on the

claim for libel against Defendant Pierre A. Maroun.

15.    The Defendant incorporates the following memorandum of law as if fully set forth

here.

WHEREFORE Defendant Pierre A. Maroun respectfully requests that this Honorable

Court set aside the Judgment entered against him and either:

A.    Dismiss the claim for libel against the Defendant for lack of subject matter

jurisdiction, or

B.    Direct a verdict as a matter of law in favor of Pierre A. Maroun on the Plaintiff's

claim of libel for the Plaintiff's failure to establish all of the necessary elements or damages; or

C.    Grant the Defendant a new trial on the claim of libel only, or

D.    Direct a zero damage award as to each damage category where the jury had not

already issued a zero verdict, and

E.    For all other further relief this Court deems just and proper.

## MEMORANDUM OF LAW

The Complaint in this case was filed on November 10, 2007, which alleged defamation

and intentional infliction of emotional distress ("IIED") resulting from a series of anonymous

statements posted on the Internet.  The Complaint was later amended to add Defendant Pierre

Maroun and Defendant Maroun's International, LLC and to include additional statements posted

by Defendant Pierre Maroun ("Maroun") on a political website.  A jury trial was held in this

cause from September 29 through October 1, 2009.  At the end of Plaintiff's case, this Court

directed a verdict in favor of Defendants Pierre A. Maroun and Maroun's International, LLC on

4

the claim for IIED.  At the conclusion of the presentation of all evidence, this Court directed a

verdict in favor of Defendant Maroun's International, LLC on all remaining counts.

The jury deliberated for approximately two hours on the sole issue of libel against

Defendant Pierre A. Maroun.  The jury awarded Plaintiff $0.00 damages for: (1) injury to

reputation or health, and for shame, humiliation, mental anguish, and hurt feelings; (2)

impairment of business, social, religious, or family relationships; or (3) aggravation of an

existing disease or physical defect resulting from such statements.  However, the jury did award

Plaintiff damages of $5,000 for the reasonable value of medical care and treatment necessarily or

reasonably obtained; $25,000 for earnings lost in the past and any loss of ability to earn money in

the future; and $60,000 in punitive damages.

I.    RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
      JURISDICTION

To invoke a federal court's jurisdiction under 28 U.S.C. § 1332, a plaintiff must claim

that the amount in controversy exceeds $75,000.  Bradley v. Kelly Services, Inc., 224 Fed. Appx.

893, 894 (11th Cir. 2007).  A federal court has a limited jurisdiction in a diversity case and the

limited nature of the court's jurisdiction in a diversity case includes a presumption against the

exercise of federal jurisdiction.  Staffing Concepts Int'l, Inc. v. CNA Claimplus, Inc., 2007 WL

843022 (M.D. Fla. Mar. 16, 2007), citing Russell Corp. v. American Homes Assur. Co., 264 F.

3d 1040, 1050 (11th Cir. 2001).  "If a district court lacks subject-matter jurisdiction, it should

dismiss the complaint 'sua sponte' if necessary."  Id. (citing Jenkins v. Lennar Corp., 2007 WL

419691, at p. 1 (11th Cir. Feb. 8, 2007)).

A motion to dismiss for lack of subject matter jurisdiction may be based on a "factual"

basis when there is insufficient evidence to show that the plaintiff can meet the $75,000

jurisdictional requirement.  <u>O'Dell v. Doychak, et. al.</u>, 2006 WL 2092283 (M.D. Fla. July 26,

2006).  In a factual attack, jurisdiction is challenged regardless of the pleadings, and matters

outside of the pleadings can be considered by the court.  <u>Id.</u>  Specifically, this Court, in <u>O'Dell</u>,

stated that:

> When the attack is factual, the trial court may proceed as it never could under
> Rule 12(b)(6) or Rule 56.  Because at issue in a motion to dismiss for lack of
> subject matter jurisdiction is the Court's very power to hear the case, there is
> substantial authority that the Court is free to weigh the evidence and satisfy itself
> as to the existence of its power to hear the case.  In a factual attack, no
> presumptive truthfulness attaches to the plaintiff's allegations, and the existence
> of disputed material facts will not preclude the Court from evaluating the merits
> of jurisdictional claims.

<u>Id.</u>

In a factual attack to subject-matter jurisdiction, the court should only dismiss when it is

"apparent to a legal certainty" that the Plaintiff cannot prove damages in excess of $75,000, but

that "deference" to the Plaintiff's jurisdictional allegations does not "eviscerate the court's

obligation to scrupulously enforce its jurisdictional limitations."  <u>Id.</u> <u>citing</u> <u>Morrison v. Allstate</u>

<u>Indem. Co.</u>, 228 F. 3d 1255, 1272 (11th Cir. 2000).   A mere conclusory allegation that the

jurisdictional amount has been satisfied, "…without setting forth the underlying facts supporting

such as assertion, is insufficient to meet the [plaintiff's] burden."  <u>Bradley</u> at 895.  The <u>O'Dell</u>

court found that "once it is clear that as a matter of law the claim is for less than the jurisdictional

amount, the district court is required to dismiss."  <u>O'Dell</u>, 2006 WL 2092283.

In this case, Plaintiff alleged, in all versions of his Complaint, that his actual damages

exceeded $75,000 and he pled separately for punitive damages.  Since Plaintiff failed to prove

actual or consequential damages in excess of $75,000 through competent, substantial evidence at

trial, the Court should dismiss the Plaintiff's claims for failing to meet the subject matter

jurisdiction of this Court.  In fact, the only damages Plaintiff introduced through evidence at trial

were (1) a collection of unauthenticated medical bills, and (2) the testimony by deposition of

Miroslaw Kukielka, a potential client for a questionable contingency fee case.  The following

testimony from Mr. Kukielka was read to the jury at trial:

Q.    So after you read all these things, you decided you're not going to retain
      Mr. Saadi, did you retain another lawyer?

A.    No, I did not retain another attorney, no.

Q.    What was the recovery against the company?

A.    Well, I have a disabled child, and the money which I had allocated for that
      were spent on something else.

Q.    But to answer my question, you've made no recovery against the
      company; is that correct?

A.    No, I did not, no.

Q.    And Mr. Saadi's valuation of $50 to $75,000 that you would recover, what
      was that based on?

A.    Well, that was based on the finding that he had apparently made during the
      course of our – you know, during the course when we were
      communicating…

Q.    Okay.  Did he ask you for any income numbers or did he tell you – other
      than it was his legal opinion, as you say, that you would recover 50 to
      75,000, did he give you any basis for those numbers?

A.    Well, he – again, number one, he was recommended to me by somebody,
      by another attorney…And, therefore, given my lack of understanding and
      knowledge in this area…I don't know how – any other way that I can
      explain it to you.

Q.    The answer to my question is no, he did not give you any basis for coming
      up with these $50 to $75,000 numbers?

A.    I mean, you will have to ask him what those basis were, how he, you
      know, figured out that this is going to be worth $50 or $75,000…

Kukielka depo. p. 30, l. 7 to p. 31, l. 23 (see doc. 112).  The witness continued his testimony

about Plaintiff's potential business damages as follows:

Q.    If I gave you the money today, would you hire Mr. Saadi?

A.     Today, after having subsequent conversations with him, yes, I would.

Q.     So if you had the money, you would be able to hire Mr. Saadi today; is that correct?

A.     That is correct.  In the meantime, the company had removed my content from their Web site.  And, again, I was not necessary driven by, you know, suing them and getting money from that company.  All I wanted was my property to be returned to me.

Q.     Oh, so it was returned to you?

A.     They removed the content from my web site, yes.

Q.     Oh, great.  So –

A.     Subsequently, several months after that.

Kukielka depo p. 44, l. 12 to p. 45, l. 3 (doc. 112).

When asked about the measure of damages, Mr. Kukielka testified that the Plaintiff had valued the case between $50,000 and $75,000, but he could not articulate any basis for the Plaintiff's valuation.  Plaintiff presented no other evidence at trial regarding the valuation of Kukielka's case, other than an unsigned retainer agreement that was altered by the Plaintiff and not authenticated by the witness at his deposition (see trial ex. 43).  Had Mr. Kukielka hired the Plaintiff, had the case not resolved itself without litigation, and had the Plaintiff achieved the maximum recovery of $75,000, Plaintiff would have only received $22,500 or 30% (assuming the higher of the two possible percentages discussed) of the recovery.  However, this recovery is highly speculative as Mr. Kukielka's testimony plainly establishes that he never hired any other attorney, and that the issue resolved itself in a few months without any litigation.  This Court, at the pre-trial conference and in its order denying the Defendants' motion to exclude Mr. Kukielka's testimony at trial, has discussed the dubious nature of Mr. Kukielka's testimony and the value of the witness' testimony as to business damages suffered by Plaintiff.  Therefore, Mr.

Kukielka's testimony cannot reasonably be considered a basis on which damages in excess of $75,000 could be established.

Plaintiff 's medical records and medical and prescription receipts for dates beginning February 3, 2009, were admitted into evidence at trial as documentation of monetary damages related to his claims for libel and IIED. See Plaintiff's trial ex. 41 and 42. The total amount of these receipts equals less than $5000 in medical-related costs, most of which were clearly paid for by Plaintiff's health insurance and not by Plaintiff. Additionally, Plaintiff failed to distinguish which medical expenses related to the libel claim and which related to the IIED claim, or explain why he had no medical expenses related to any of his claims prior to February 9, 2009 (almost two years after he filed his Complaint).

Furthermore, Plaintiff did not present the jury with any medical or expert testimony to explain to the jury the basis for these medical bills. The only testimony at trial regarding Plaintiff's medical problems or treatment came from Plaintiff himself and Plaintiff's father, who was a retired physician, and who did repeatedly attempt to testify as a make-shift medical expert, over the Defendant's objections. Plaintiff's original complaint was filed on November 10, 2007 and these alleged medical damages accrued well after that initial filing date (and the date Defendant Pierre Maroun was named as a Defendant). Therefore, these expenses could not have been included in any reasonable calculation of Plaintiff's damages necessary to invoke the jurisdiction of this Court under 28 U.S.C. § 1332 at the time of filing or even at the conclusion of Plaintiff's case in chief at trial.

The jury awarded Plaintiff $30,000 in compensatory damages, and awarded Plaintiff no damages for injury to reputation, impairment of relationship, business losses or medical losses. Plaintiff did not have and failed to prove damages in excess of $75,000 at the time he filed the

original complaint on November 10, 2007, or at any time up through the trial.  Although the

Plaintiff was afforded every opportunity to prove his compensatory damages during discovery

and at trial, he clearly failed to do so.  Therefore, in accordance with F. R. Civ. P. 12(h)(3) and

relevant case law, Plaintiff's libel claim and the Final Judgment entered against Pierre A.

Maroun should be dismissed due to the lack of subject-matter jurisdiction for Plaintiff's failure to

show damages related to the alleged libel in excess of $75,000.

II.    RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR, IN THE
       ALTERNATIVE, MOTION TO ALTER JUDGMENT OR FOR A NEW TRIAL

Defendant moved for a Judgment as a Matter of Law at the conclusion of Plaintiff's case,

and again at the conclusion of the Defendants' case.  The Court granted the motions as to the

Defendant Maroun's International LLC, and as to the claim of IIED against both Defendants.  As

to the remaining claim of libel against Defendant Pierre Maroun, the Court allowed the matter to

proceed to jury deliberations.  The jury's verdict is discussed above, and a directed verdict in

favor of the Defendant should be entered, or, in the alternative, an amended or altered judgment

should be entered, or a new trial should be granted on the claim of libel against Defendant Pierre

Maroun for the following reasons:

**A.    Evidence of compromise and offers to compromise was admitted at trial and
       clearly prejudiced the Defendant.**

The jury was allowed to hear a voicemail recording left by Defendant Pierre Maroun, and

a voicemail recording left by Antoine Maroun, both of which were left on Plaintiff's voicemail in

late February 2008.  In addition, live testimony from Plaintiff, Defendant Maroun and Antoine

Maroun was admitted at trial about out of court conversations between these individuals that

were directly related to the voicemail recordings.   The substance of the messages and related out

of court statements were: (1) that if Defendant Maroun were to remove certain statements from

10

certain Internet blogs and sites, then Plaintiff would dismiss his lawsuit against Defendant

Maroun, and (2) Defendant Maroun's confirmation that he had taken steps to have those certain

statements "taken off the Internet."

The voicemail recordings and the testimony regarding conversations related to these

recordings were clearly proof of compromise and offers to compromise that occurred after the

lawsuit had already been filed and served on the Defendant.  The Plaintiff, in a declaration he

filed with the Court prior to trial states that Antoine Maroun called him and offered to have

Pierre Maroun remove postings from the internet in an attempt to settle the case.  See doc. # 126,

¶ 3-7.  Additionally, Plaintiff, Defendant Maroun, and Antoine Maroun each independently

admitted at trial that the purpose of this series of conversations was to settle the dispute between

the parties and settle the case.  While not clothed in the formality of traditional litigation

settlement negotiations ( i.e. a letter or a mediation), the voicemail recordings and the testimony

related to them should have been excluded at trial pursuant to Federal Rule of Evidence 408,

which reads as follows:

Rule 408. Compromise and Offers to Compromise

(a) Prohibited uses.--Evidence of the following is not admissible on behalf of any
party, ***when offered to prove liability for***, invalidity of, or amount of a claim that
was disputed as to validity or amount, or to impeach through a prior inconsistent
statement or contradiction:

(1) furnishing or offering or promising to furnish--or accepting or offering
or promising to accept--a valuable consideration in compromising or
attempting to compromise the claim; and

(2) ***conduct or statements*** made in compromise negotiations regarding the
claim, except when offered in a criminal case and the negotiations related
to a claim by a public office or agency in the exercise of regulatory,
investigative, or enforcement authority.

(b) Permitted uses.--This rule does not require exclusion if the evidence is offered
for purposes not prohibited by subdivision (a). Examples of permissible purposes

include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

<u>F. R. Evid. 408</u> (emphasis added).

> This Court has previously interpreted Rule 408 as follows:
>
>> The Advisory Committee's Notes explain that the primary purpose of the rule is the promotion of the public policy favoring the compromise and settlement of disputes. The Eleventh Circuit provides that "***the test for whether statements fall under this rule is 'whether the <u>statements</u> or <u>conduct</u> were intended to be a part of the negotiations toward compromise***. <u>Blu-J, Inc. v. Kemper C.P.A. Group</u>, 916 F.2d 637, 642 (11th Cir.1990) (citing <u>Ramada Dev. Co. v. Rauch</u>, 644 F.2d 1097, 1107 (5th Cir.1981)).

<u>Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters North America, Inc.</u>, 2008 WL 4080205 (M.D.Fla. 2008) (emphasis added). Neither the rule nor the case law states or even suggests that, for Rule 408 to apply, statements and conduct must have arisen out of a formal settlement process. To hold otherwise would stifle a litigant's right to negotiate a settlement of claims directly with another party, and would contravene the purpose of Rule 408.

Here, both Defendant Maroun and Antoine Maroun made statements and took actions in an attempt negotiate a compromise and settlement of the case early in the process. The statements and conduct took place after Plaintiff had filed the case against Pierre Maroun, and *were initiated by Plaintiff's call to Antoine Maroun*. Clearly, based on Plaintiff's own testimony and sworn declarations to the Court, the intention behind these conversations and the resulting voice mails were to have the postings removed from the Internet and to settle the case. Plaintiff also testified that he had voluntarily dismissed an identical complaint filed against another defendant in New Jersey, after certain Internet postings were removed. Antoine Maroun testified that when he asked Plaintiff what could be done to dismiss the case, Plaintiff stated that if the postings were removed from the Internet it would go a long way toward settling the case. This was a clear "offer" to settle, which required Defendant's performance as an acceptance.

12

Defendant Maroun's voicemail recording stating that the statements had been removed and that he expected Plaintiff to dismiss the lawsuit was clearly acceptance and performance.

These recordings should not have been allowed into evidence, and testimony from Plaintiff, Defendant Pierre Maroun or Antoine Maroun about these settlement negotiations should have been excluded as well. The Plaintiff used the recordings and elicited the related testimony at trial for the sole purpose of establishing the liability of Pierre Maroun for the anonymous statements. Since no other substantial evidence was offered at trial to connect Defendant Maroun to the posting of the anonymous statements, and since the jury found that Defendant Maroun posted the anonymous statements, the Defendant was unmistakably prejudiced by the admission of these out of court statements into evidence at trial.

The use of compromises and offers to compromise to prove a party's liability for damages is strictly prohibited by Rule 408 and Florida case law, violation of which would constitute reversible error on appeal. Without this evidence, the jury could not have reasonably found Defendant Maroun liable for the anonymous statements and the finding of libel for these statements is inextricably intertwined with the finding of liability for libel on the articles Defendant Maroun admits to having posted in trial exhibits 19 and 20. Therefore, the verdict should be set aside and judgment as a matter of law on the count of libel should be entered in favor of Defendant Pierre Maroun. In the alternative, since there is no way to know which portion of the jury's damages award related to the anonymous statements versus the statements published in trial exhibits 19 and 20, the verdict should be set aside and a new trial should be ordered on the count of libel against Defendant Maroun.

**B.     Evidence that was not properly authenticated was admitted at trial and prejudiced the Defendant.**

Plaintiff's trial exhibits 16 through 18 should never have been admitted into evidence and

13

published to the jury, as well as Exhibits 21 through 25 and 31. Each of these exhibits contained portions of various Internet websites or portions of results from Internet search engines that were Plaintiff claims he printed from the Internet on various dates prior to and during the litigation.

As support for Defendants' objections to the authenticity and admissibility of these documents, the Court was presented with <u>St. Luke's Cataract and Laser Institute, P.A. v. Sanderson</u>, 2006 WL 1320242 (M.D. Fla. 2006), which came upon a Motion For Admission of Evidence and held that websites are not self-authenticating for purposes of satisfying the requirements of F. R. Evid. 901 and 902. In that case, the proponent of evidence sought a ruling on the admissibility of printouts from websites printed on various dates. The Court denied the motion, stating that, "[t]o authenticate printouts from a website, the party proffering the evidence must produce some statement or affidavit from someone with knowledge [of the website] ... for example [a] web master or someone else with personal knowledge would be sufficient." <u>Id.</u> The <u>St. Luke's</u> case relied on previous opinions from this Court and other federal case law. <u>See</u> <u>Sun Protection Factory, Inc. V. Tender Corp.</u>, 2005 WL 2484710, slip op. at 6, n. 4 (M.D. Fla. October 7, 2005), <u>and also</u> <u>In re Homestore.com, Inc. Sec.Litig.</u>, 347 F.Supp.2d 769, 782 (C. D. Cal. 2004).

The evidence that Plaintiff introduced through trial exhibits 16, 17, 18, 21, and 25 through 31 were all allegedly printed from various blogs, websites and search engines not owned, operated or maintained by the Plaintiff. Additionally, Plaintiff did not present any other witness that did have personal knowledge of the printouts presented or even a sworn statement from a records custodian for any of the websites involved that would authenticate the printouts. At trial, Plaintiff's counsel argued, without any support case law, that the printouts were merely "pictures" of the Plaintiff's computer screen, and should be admitted as if they were a

photograph Plaintiff had taken of a tree.  However, this argument fails to take into account what is actually contained in the documents that were being presented at trial, and failed to take into account the fact that these printouts were clearly altered by Plaintiff after printing, or otherwise manipulated by Plaintiff at the time of printing.  All of these "printouts" could have easily been created by the Plaintiff, and therefore, do not have any of the same indicia of reliability as a photograph would have.

Additionally, equating a printout of words and images contained on an interactive Internet website to a photograph of a tree is, legally speaking, ridiculous.  A website printout contains hearsay statements that are constantly being manipulated by the owner of the website and can easily be manipulated by the person printing it.  Therefore, authentication of such an exhibit at a trial, where the Defendant can be unfairly prejudiced by the improper admission of evidence, is absolutely essential as a threshold requirement to admissibility.  Defendant Maroun is now subject to a $90,000 judgment based on evidence that was obviously and admittedly altered by the Plaintiff, and to which the Plaintiff offered inconsistent and unreliable testimony regarding when the evidence was printed, and even what information was contained in portions of the documents that he himself redacted.  The printouts contained in each of these trial exhibits were all unauthenticated hearsay statements, which were introduced at trial for the truth of the matter asserted, and should have been excluded from evidence under Rules 901 and 902.

The Plaintiff's argument at trial that there was no other way to authenticate these printouts is also without merit.  The Plaintiff, who issued more than one subpoena to both Google and Yahoo, Inc. (the entities that hosted the websites, blogs and search engines that were allegedly the source of the printouts), could have easily added to his subpoenas a request to provide authenticated versions of the printouts Plaintiff sought to admit at trial.  In fact, Plaintiff

was aware that he needed to authenticate these printouts, as he propounded his Second Set of Request For Admissions to the Defendants in an unsuccessful attempt to authenticate many of these same printouts.  See Ex. A.

Plaintiff's trial exhibits 16, 17, 18, 21 through 25, and 31 should have been excluded at trial, and not published to the jury, as they were all unsubstantiated and unauthenticated hearsay considered by the jury.   Considering the weight of the evidence without these exhibits, no reasonable jury could have found Defendant Pierre Maroun liable for libel and no reasonable jury would have awarded $60,000 in punitive damages against Defendant Pierre Maroun. Therefore, the verdict should be set aside and judgment as a matter of law on the count of libel should be entered in favor of Defendant Pierre Maroun.  In the alternative, since there is no way to know which portion of the jury's damages award related to the anonymous statements versus the statements published in trial exhibits 19 and 20, the verdict should be set aside and a new trial should be ordered on the count of libel against Defendant Maroun.

III.    MOTION TO ALTER OR AMEND JUDGMENT OR IN THE ALTERNATIVE
        MOTION FOR NEW TRIAL

Defendant Pierre Maroun moves this Court to alter or amend the jury's verdict, or, in the alternative, grant the Defendant a new trial on the count of libel for the following reasons:

1.    As discussed above, statements and conduct evidencing compromise and offers to compromise between the parties was admitted into evidence at trial, which evidence was introduced to prove Defendant Maroun's liability for posting the anonymous statements, and which evidence did in fact prejudice the Defendant;

2.    As discussed above, unauthenticated documents of questionable reliability were admitted into evidence, which documents did in fact prejudice the Defendant;

16

3.      The jury's award of $5,000 in medical expenses and $25,000 for lost earnings is

not supported by the greater weight of the evidence admitted at trial; and

4.      The jury award of $60,000 in punitive damages is excessive, is not supported by

the evidence, and conflicts with the jury's zero awards for "pain and suffering"

damages, as well as the jury instructions on punitive damages.

A judgment can be altered or amended or a new trial can be ordered on all or some of the

issues pursuant to motion or at the court's discretion.  F. R. Civ. P. 59.  A new trial can be

ordered if the jury's verdict was against the greater weight of the evidence or if damages are

excessive, or for other reasons that made the trial unfair or to prevent injustice.  DEAS and

Peterbilt of Florida, Inc. v. PACCAR, INC., 775 F. 2d 1498, 1504-1505 (11th Cir., 1985).  A

court can order a new trial due to a combination of factors that would have caused a jury to reach

a possibly erroneous verdict.  Id. at 1505.

After a two and a half day trial, involving 42 admitted exhibits, the jury deliberated for

approximately two (2) hours before returning with a verdict.  The jury's verdict can be found at

docket number 225.

A.      Medical Damages.

The jury awarded Plaintiff $5,000 for medical care and treatment, which was the *face

value* of the medical bills admitted as Plaintiff's trial exhibit 42.  Plaintiff's medical bills were

unauthenticated, except by his own testimony.  The first page of exhibit 42 clearly shows that the

Plaintiff had submitted many of these expenses to his medical insurance carrier for payment.

When the out-of-pocket values shown on the documents included at exhibit 42 are added

together, the true amount of Plaintiff's cost of medical care and treatment is actually less than

$2,700.  However, Plaintiff's medical expenses and medical records were presented into

evidence, over Defendant's objection, without any expert or medical testimony to (1) connect Plaintiff's condition(s) to the claims included in the Complaint and (2) to substantiate the reasonableness of the expenditures.

At the time the medical reports and bills were introduced, the Plaintiff's claim for IIED had not yet been dismissed by this Court. Plaintiff failed to distinguish which medical bills and conditions were attributable to the libel, and which expenses were attributable to the alleged IIED. When the jury received the case for deliberation, the jury had no choice but to attribute all of the medical bills to the libel claim. In his case in chief, Plaintiff presented various emails in support of his IIED claim. Both the Plaintiff and his father testified that these "threatening" emails were the main cause of Plaintiff's emotional distress and the cause of his various medical conditions. The Court, after dismissing the IIED claim on directed verdict should have excluded the emails as well as the medical reports and bills from evidence as they were not introduced in order to prove any elements of Plaintiff's libel claim, but only to establish the elements and damages of Plaintiff's IIED claim.

The inclusion of this compounded testimony and evidence could have easily confused the jury in its determination of not only medical damages but also punitive damages. Evidence of this confusion is apparent in the irreconcilable conflict between the jury's award of zero damages under category 7(a) for mental anguish and hurt feelings and 7(b) for aggravation of an existing disease or physical defect on the verdict form. See doc. # 225. Therefore, the jury's award of $5,000 in medical expenses goes against the greater weight of the evidence and should be removed from the judgment.

18

### B.    Business Losses.

The jury also awarded $25,000 to Plaintiff for lost earnings and loss of ability to earn money in the future.  The Plaintiff offered absolutely no evidence at trial regarding his past, present or future business or personal income.  As to Plaintiff's loss of income or ability to earn income, the only evidence offered at trial was the deposition testimony of Miroslaw Kukielka. The dubious and highly speculative nature of Mr. Kukielka's value as client to Plaintiff is discussed at length above in section I.

Given the fact that Plaintiff provided no foundation for his actual past or current earnings, the only reasonable interpretation of the award in this category was that the jury must have relied only on Mr. Kukielka's testimony.   This portion of the jury award is not based on any competent, substantial evidence as discussed above.  Therefore, the jury's award of $25,000 for past or future income losses could not be based on the greater weight of the evidence and should be removed from the judgment.

### C.    Punitive Damages

It appears that the jury ignored the testimony of Plaintiff, Plaintiff's father, and Plaintiff's girlfriend, Kerri Capone, when they awarded zero damages as to any injury to reputation or health and any shame, humiliation, mental anguish, and hurt feelings experienced in the past or to be experienced in the future, and zero damages as to any impairment of business, social, religious, or family relationships, and zero damages as to any physical, mental, and emotional injuries.  However, these zero awards for "pain and suffering" damage directly conflict with the jury's award to Plaintiff of $60,000 in punitive damages.

The jury instructions, which at page 22, as to punitive damages, state: "However, you may not award an amount that would financially destroy the Defendant."  During the trial the

19

jury heard unrefuted testimony from Defendant Pierre Maroun that, in 2008 he had a gross income of approximately $40,000, and in 2007 had a gross income of approximately $20,000. Awarding the Plaintiff punitive damages from the Defendant in an amount that equals two years gross earnings, could do nothing but financially destroy Pierre Maroun. Awarding $60,000 in punitive damages in the same verdict where zero damages were awarded for injury to reputation, shame, humiliation and mental anguish, or impairment of business, social or family relationships, or physical, mental and emotional injuries, shows clearly that the jury did not follow or understand the punitive damages instruction. Therefore, the jury's award of punitive damages could not be based on the greater weight of the evidence and is contradictory to the jury instructions and should be reversed.

Should this Court not dismiss the case for lack of subject matter jurisdiction, or direct a verdict in favor of the Defendant on the issue of libel, or grant this Defendant a new trial, this Court should set aside the jury's verdict as to the damages portion and direct a zero damage award in each of the three categories that the jury awarded monies.

IV.    CONCLUSION

The jury was presented with evidence that should have been excluded at trial as it was clearly prejudicial to the Defendant and did not bear the necessary indicia of reliability (in the case of the exhibits of the internet websites printouts), or was in clear violation of Federal Rule of Evidence 408 (in the case of the two voicemail messages and the testimony received regarding settlement). Further, the Plaintiff failed to distinguish which of his medical damages arose from his IIED claim. As this claim was dismissed prior to jury deliberations, the Court should have excluded the e-mails, medical records and medical bills from evidence. Further, the jury award confirms that the jury did not believe that Plaintiff suffered most of the damages sought by the

Plaintiff and only addressed the medical bills for the diagnostic procedures, and business loss

based on the testimony of Mr. Kukielka.  The jury's zero award on all other categories (with the

exception of punitive) is very telling as to what the Plaintiff was able to prove at trial.

    The Defendant asks this Court to dismiss the case for lack of subject matter jurisdiction,

or direct a verdict in his favor on the count of libel, or grant him a new trial as to libel only, or in

the alternative alter the damages portion of the verdict and direct a zero damages award for any

monetary damages awarded by the jury at trial.

        Dated this 16th day of October, 2009.

                        Respectfully submitted by,

                        /s Jill A. Schuh
                        _____
                        Jill Schuh, Esquire (FBN: 36453)
                        Lior Segal, Esquire (FBN: 37837)
                        SEGAL & SCHUH LAW GROUP, P.L.
                        13575 58th Street North, Suite 140
                        Clearwater, Florida 33760
                        Tel: 727-824-5775 / Fax: 888-672-7347
                        Jill@segalschuh.com
                        Lee@segalschuh.com
                        *Attorneys for Defendant Pierre Maroun*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been
electronically filed with the court on this 16th day of October, 2009, and, therefore, was not sent
by mail to any other party.

                        /s Jill A. Schuh
                        _____
                        Jill Schuh, Esquire (FBN: 36453)
                        Lior Segal, Esquire (FBN: 37837)
                        SEGAL & SCHUH LAW GROUP, P.L.
                        13575 58th Street North, Suite 140
                        Clearwater, Florida 33760
                        Tel: 727-824-5775 / Fax: 888-672-7347
                        Jill@segalschuh.com/Lee@segalschuh.com

Mark E. Pena, Esquire (FBN: 006254)
LAW OFFICE OF MARK E. PENA, P.A.
334 South Hyde Park Avenue, 2d Floor
Tampa, Florida 33606
Tel: 813-251-1289 / Fax: 813-258-1810
Lpena001@tampabay.rr.com

*Attorneys for Defendant Pierre Maroun*