UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD T. SAADI,

    Plaintiff,

v.                                                                   Case No. 8:07-cv-1976-T-24 MAP

PIERRE A. MAROUN,

    Defendant.
_____/

## **ORDER**

       The Court now considers Defendant's post-trial motion (Doc. 237) seeking relief on four different grounds. In the same motion, Defendant Pierre A. Maroun asks the Court to dismiss the case for lack of subject matter jurisdiction, seeks a judgment as a matter of law, asks the Court to amend or alter the judgment, and seeks a new trial.

       Maroun's motion follows a three-day trial that ended October 1, 2009 with the jury finding that Maroun had defamed Edward T. Saadi by posting five items on the Internet about him. (Doc. 225.) The Court entered a judgment for Maroun on an intentional infliction of emotional distress claim, and entered a judgment for Defendant Maroun's International, LLC on all counts. (Docs. 228, 230.)

       Plaintiff Edward T. Saadi moves to strike Defendant's motion on procedural grounds. (Doc. 241).

       On procedural grounds, the Court could deny as untimely three of the four forms of relief that the Defendant seeks. Federal Rules of Civil Procedure 50 and 59 require a party to move for

1

a judgment as a matter of law, an amended judgment, and a new trial within 10 days of the entry of judgment. The Clerk entered judgment in this case on October 2, 2009. Defendant first filed his motion on October 16, 2009, the final day before the motion became untimely. However, because Defendant filed the motion improperly, the Clerk terminated it. Defendant then waited four more days until October 20, 2009 to re-file the motion properly. At this point, the motion was four days late. Although the Court can deny the motion as untimely, the Court will also consider the merits of the motion.[1]

### 1. Defendant's Motion to Dismiss is Denied

Although Defendant was late seeking a new trial, an amended judgment, and a judgment as a matter of law, he sought in a timely fashion to dismiss the case for lack of subject matter jurisdiction. A party may raise lack of subject matter jurisdiction at any time. Fed. R. Civ. P. 12(h)(3). In his motion, Defendant argues that the Court lacks subject matter jurisdiction because the amount in controversy in this diversity lawsuit did not exceed $75,000. 28 U.S.C. § 1332. This is an odd argument considering that the jury returned a verdict for Plaintiff for $90,000. (Doc. 225.)

Congress conferred jurisdiction on federal district courts to hear cases between parties from different states where the amount in controversy in the lawsuit exceeds $75,000. 28 U.S.C. § 1332. The Court considers the amount in controversy at the beginning of the lawsuit. As long

---

[1] Saadi also asks the Court to strike Maroun's motion for failure to comply with Local Rule 3.01(g), which requires parties to confer before filing a motion and to certify that they have made a good-faith effort to resolve the issue in dispute in the motion. (Doc. 241.) Although Maroun did not comply with this rule, the Court will excuse this mistake in the interest of judicial economy because Maroun's motion restates many of the objections raised in trial. In addition, Local Rule 3.01(g) does not apply when a party moves to involuntarily dismiss a case as Maroun does in his motion to dismiss.

2

as it appears from the pleadings that the amount in controversy will exceed $75,000, the Court can decide the case. A party challenging jurisdiction must show by a "legal certainty" that the amount in controversy does not exceed $75,000. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). "It is well established that attorney's fees and punitive damages, when allowed by applicable state law, may be included in determining the amount in controversy." Blank v. Preventive Health Programs, Inc. 504 F. Supp. 416, 421 (S.D. Ga 1980) (citing Bell v. Preferred Life Assurance Soc'y, 320 U.S. 238 (1943)). In fact, even where the amount in controversy falls below $75,000 after a lawsuit begins or where a party does not recover at least $75,000, a federal district court does not lose jurisdiction under §1332. St.Paul Mercury Indem. Co., 303 U.S. at 288-90.

In this case, the jury after a three-day trial found in favor of Plaintiff Edward Saadi on his claim that Defendant Pierre Maroun defamed him by posting five pieces on the Internet about him that damaged Saadi's reputation. The jury awarded Saadi a total of $90,000 in damages. Of the total, the jury awarded Saadi $5,000 for the reasonable value of medical care and treatment caused by the defamatory postings, and $25,000 for lost past earnings and loss of ability to earn money in the future caused by the Internet postings. The jury also awarded Saadi $60,000 in punitive damages. (Doc. 225.)

Defendant apparently believes that because Saadi pled punitive damages separately from compensatory damages, punitive damages should not be counted in determining the amount in controversy. (Doc 237 at 6 ¶ 3.) But the law holds otherwise. "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered. . ." Holley Equip. Co. v. Credit Alliance Corp., 821 F.2d 1531, 1535 (11th Cir. 1987). Even if the

3

jury had not awarded punitive damages, the fact that the jury found only $30,000 in compensatory damages would not deprive the Court of jurisdiction.  Although Saadi, an attorney, only presented deposition testimony of one client who did not hire him after reading the Internet postings, Saadi argued in good faith that he lost other legal business from clients who saw the Internet postings and never told him why they had not hired him.  Defamatory statements on the Internet are damaging precisely because the victim may never know how many people read the Internet postings and then shunned him.  As long as Saadi pled the amount in controversy in good faith, the fact that he failed to recover more than $75,000 in compensatory damages does not strip the Court of jurisdiction.  St. Paul Mercury Indem. Co., 303 U.S. at 288-90.

Because Saadi in good faith pled damages that exceeded $75,000, Defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

### 2.  Defendant's Motion for Judgment as Matter of Law and Motion for a New Trial are Denied

In deciding whether to grant Maroun a judgment as a matter of law, "[t]he question before the district court . . . is whether the evidence is 'legally sufficient to find for the party on that issue. . . .'"  Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007).  Similarly, in considering whether to grant Maroun a new trial, "the general grounds for a new trial are that the verdict is against the weight of the evidence, that the damages are excessive, or that for other reasons the trial was not fair. . . ."  Diane Mfg. Co. v. Sheffield Indus. Inc., 514 F. Supp. 185, 186 (S.D. Fla 1981) (quoting Wright & Miller, Federal Practice & Procedure § 2805).  In addition, "substantial errors in the admission or rejection of evidence" or any "error of law, if prejudicial, is a good ground for a new trial."  Id.

Maroun argues that the Court made two errors of law by admitting evidence of compromise that should have been excluded under Federal Rule of Evidence 408 and by admitting unauthenticated printouts of the defamatory Internet postings that should have been excluded under Rule 901. He also argues that the evidence does not support the jury's damage award.

A.  **Voice Recordings and Testimony about Recordings Were Not Evidence of Compromise Under Rule 408**

Rule 408 limits the admissibility of statements and other evidence that offer, furnish, or promise to furnish valuable consideration in compromising—or attempting to compromise—a claim. Fed. R. Evid. 408(a)(1). The Rule also limits the admissibility of conduct or statements made in compromise negotiations. Fed. R. Evid. 408(a)(2). The Rule exists to encourage settlement negotiations. By prohibiting a party from using a statement made as part of a compromise, the Rule creates an environment where parties can discuss a claim freely without fear that their statements will be used against them should negotiations fail. Wright & Miller, Federal Practice & Procedure §5301 n.23.

Maroun argues that the Court should not have admitted a phone message left on Saadi's answering machine shortly after Saadi filed this lawsuit into evidence and should not have permitted testimony about the phone message. In the phone message, Maroun told Saadi that he had removed everything from the Internet. Maroun also told Saadi that he needed him to drop the lawsuit that day. He said he did not want Saadi to get hurt, socially. (Trial Ex. 53.)

Rule 408 does not protect Maroun's phone message or testimony about the phone message since Maroun's call cannot be considered an offer to compromise. The call was more of an unilateral concession than a compromise. On his own, Maroun told Saadi that he had taken

5

the postings off the Internet. He did so without obtaining any agreement from Saadi to drop the lawsuit. Maroun did not offer to compromise by, for example, removing the posting *if* Saadi dropped the lawsuit. Instead, Maroun acted on his own—and only then did he ask Saadi to drop his lawsuit.

"An unconditional offer . . . is not an offer of settlement under Rule 408 because unconditional offers . . . do not require that [a party] abandon or modify their suit." Knox v. Cessna Aircraft Co., No. 4:05-cv-131(HL), 2007 WL 2874228, at *9 (M.D. Ga. Sept. 26, 2007) (citing Lightfoot v. Union Carbide Corp., 110 F.3d 898, 909 (2d Cir.1997)).

Moreover, even if the Court had not admitted the phone message and testimony about the phone message, the jury could rely on sufficient circumstantial evidence to find that Maroun published the defamatory Internet postings at issue in this case. Maroun admitted to publishing two of the exhibits. The posting that Maroun admitted publishing closely resembled the other Internet postings in this case. In addition, Saadi presented evidence from an Internet expert who testified that the Internet postings came from addresses in the Tampa Bay area associated with Maroun. Therefore, the jury had sufficient circumstantial evidence to find that Maroun published the defamatory Internet postings, even without the phone messages or testimony about the messages admitted into evidence.

**B.     Plaintiff Properly Authenticated Printouts of Internet Postings Under Rule 901**

Federal Rule of Evidence 901 requires that before a court may admit evidence in trial, a party must present evidence sufficient to show "that the matter in question is what its proponent claims." Fed. R. Evid. 401(a). A party can authenticate evidence in several different ways, including by presenting testimony of a witness with knowledge of the evidence. Fed. R. Evid.

6

401(b).

Saadi testified at trial that he printed from the Internet various postings that contained derogatory statements about him. Saadi had personal knowledge of the content of the Internet postings on the day that he printed the postings off the world wide web. Importantly, Saadi did not offer the Internet postings to prove that Maroun wrote the postings, or even that the postings reflected the work of a specific website. Instead, Saadi offered the postings for the limited purpose of proving that the postings had appeared on the world wide web on the days that Saadi personally saw the postings and printed them off the computer.

Maroun argues that the Court erred in admitting the Internet postings into evidence without requiring Saadi to call a website owner or webmaster to authenticate the postings. The Court agrees that Rule 901 would have required Saadi to authenticate the Internet postings by calling a website owner or webmaster if Saadi had offered the postings to prove that the postings came from a specific person or organization. But Saadi offered the website printouts for a narrower purpose. Thus, his testimony satisfied the admissibility requirements of Rule 901.

Maroun cites to St. Luke's Cataract and Laser Institute, P.A. v. Sanderson, No. 8:06-cv-223-T-MMS, 2006 WL 1320242 (M.D. Fla. May 12, 2006) (Scriven, J.), for the proposition that Saadi should have called a webmaster to authenticate the Internet postings. However, St. Luke's Cataract and Laser Institute dealt with a different issue than the one in this case. In St. Luke's, the Plaintiff attempted to offer printouts from the Internet Archive website to prove how two other websites looked at various times in the past. The Internet Archive site captures past images from websites, and then creates an archive of how websites look over time. The court held that the Plaintiff would need to present evidence from an Internet Archive official with

7

personal knowledge of how the archive worked. In this case, Saadi had personal knowledge of how the sites looked on the dates in question because he testified that he saw the Internet postings and then printed them out from his computer. He did not rely on a third party—such as the Internet Archive website—to provide the evidence needed for admissibility of the postings. Saadi had personal knowledge of the existence of the Internet postings, unlike the witness in Sun Protection Factory, Inc. v. Tender Corporation, No. 6:04-cv-732-ORL-19-KRS, 2005 WL 2484710, at *6 (M.D. Fla. Oct. 7, 2005) (Fawsett, C.J.), another case cited by Maroun. In Sun Protection Factory Inc., the witness did not testify that he actually viewed the websites on the dates in question. Similarly, the Plaintiff in In re Homestore.com Inc. Securities Litigation, 347 F. Supp. 2d 769, 782-83 (C.D. Cal. 2004), offered website printouts of press and earning releases to prove that the releases came from a specific company. Saadi did not offer the postings to prove that Maroun authored them; he only offered the exhibits to prove that the derogatory statements had been published on the world wide web on the dates he saw them.

## C.    Jury Had Sufficient Evidence for Its Damage Award

Maroun also challenges the jury's damage award, arguing that the jury lacked sufficient evidence to award Saadi $5,000 for the reasonable value of medical care and treatment, and $25,000 for lost past earnings and loss of ability to earn money in the future.

The Court finds that Saadi presented sufficient evidence for the jury to award $5,000 for medical care and treatment. Besides introducing some of his medical bills, Saadi offered his own testimony, the testimony of his father, and the testimony of his girlfriend to show that he suffered physical symptoms and mental anguish after he read the Internet postings, which ridiculed him and accused him of being connected to terrorism.

8

The jury could have reached its findings of damage even without hearing any testimony about an e-mail that Saadi considered threatening, which formed the basis of Saadi's unsuccessful intentional infliction of emotional distress ("IIED") claim. Because the Court did not instruct the jury on the intentional infliction of emotional distress claim and did not include the IIED claim on the verdict form, there is no likelihood that the jury considered the IIED claim in reaching its damage award on the libel claim or was confused by a claim it did not consider.

Moreover, if Maroun wanted the Court to exclude any evidence as a result of the Court's Rule 50 judgment on the IIED claim, then Maroun should have requested the Court to exclude the evidence during the trial. By failing to do so, Maroun waives his objection now. See Denis v. Liberty Mut. Ins. Co., 791 F.2d 846, 848-49 (11th Cir. 1986) ("Failure to raise an issue, objection, or theory of relief in the first instance to the trial court generally is fatal."); Saunders v. Chatham Bd. of County Comm'rs, 728 F.2d 1367, 1368 (11th Cir. 1984) ("Requiring an objection means that counsel cannot remain silent at trial and then contend that evidentiary rulings require reversal.") However, even if Maroun had requested that the Court remove the e-mail at the heart of the IIED claim, the Court would not have done so because Saadi also offered the e-mail as circumstantial evidence that Maroun authored the defamatory Internet postings about him.

Maroun also argues that the jury had insufficient evidence to award Saadi $25,000 for lost past income or ability to earn income in the future. However, the jury heard testimony that at least one client declined to hire Saadi as an attorney after reading the Internet postings that he was connected to terrorists. A jury could have concluded that Saadi lost other potential clients who simply did not tell Saadi of their decision not to hire him.

9

Finally, Maroun argues that the jury had no basis for its $60,000 punitive damage award because it awarded Saadi no money for pain and suffering. This comparison misconceives the purpose of punitive damages. A jury may award punitive damages to punish a party for acting with malice, moral turpitude, wantonness, willfulness or reckless indifference to the rights of others. Brown v. Ford, 900 So. 2d 646, 648 (Fla. 1st DCA 2005). The nature of Maroun's defamatory statements itself provides a basis for punitive damages. Because punitive damages punish a party for wrongdoing, they need not precisely correlate to the amount of "pain and suffering." Under Florida law, as long as the jury awards some actual damages and finds that the Defendant acted with malice, no reasonable relationship needs to exist between the actual damage and the punitive damage award. Wynn Oil Co. v. Purolator Chem. Corp., 403 F. Supp. 226, 232 (M.D. Fla. 1975). However, in this case, a reasonable relationship does exist. The jury's $60,000 punitive damage award is only twice its $30,000 compensatory damage award.

**D.    Maroun Cannot Show that $60,000 Punitive Damage Award Will Financially Destroy Him**

Maroun next argues that the jury's $60,000 punitive damage award would financially destroy him and should be overturned. "Punitive damages should be painful enough to provide some retribution and deterrence, but should not be allowed to destroy the defendant." Arab Terminite & Pest Control of Florida, Inc. v. Jenkins, 409 So. 2d 1039, 1043 (Fla. 1982).

Maroun has not established that the $60,000 punitive damage award would financially ruin him, even though he testified at trial that he had a gross income in 2008 of $40,000 and a gross income in 2007 of $20,000. The jury could have chosen not to believe Maroun's testimony about his gross income. Even if the jury accepted Maroun's claim, his testimony

10

about his gross income for two years does not necessarily mean that he earned less money before 2007. Nor does it mean that he will not earn substantially more money in 2009. In addition, Maroun's testimony of his gross income for two years does not establish his net worth. Maroun might have substantial assets, including a car, a home, savings, and a retirement fund, that he could tap to pay the $60,000 punitive damage award without financial ruin.

Therefore, the Court will not tamper with the jury's damage award, including its punitive damage award.

### 3. Defendant's Motion to Amend or Alter Judgment is Denied

Defendant seeks to amend or alter the judgment pursuant to Federal Rule of Civil Procedure 59. "A motion to alter or amend a judgment must demonstrate why the court should reconsider its prior decision and 'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" Wendy's Int'l, Inc. v. Nu-Cape Constr., Inc., 169 F.R.D. 680, 684 (M.D. Fla. 1996) (Kovachevich, C.J.) (quoting Cover v. Wal-Mart Stores, Inc., 148 F.R.D. 294 (M.D. Fla. 1993)). There are three "grounds justifying reconsideration of an order: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." Id. at 684 (citations omitted). However, "reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Id. at 685. Rule 59(e) is not "a vehicle for rehashing arguments already rejected by the court or for refuting the court's prior decision." Id. at 686. (citation omitted).

Because none of Maroun's arguments satisfy this high standard of review, Maroun's motion to amend or alter the judgment is denied.

## **CONCLUSION**

Accordingly, it is ORDERED and ADJUDGED that Defendant's motion (Doc. 237) is **DENIED**, and Plaintiff's motion to strike (Doc. 241) is **DENIED as moot**.

Furthermore, the Clerk is directed to close the close.

**DONE and ORDERED** at Tampa, Florida this 4th day of November, 2009.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record