UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD T. SAADI,

    Plaintiff,

v.                                                  Case No: 8:07-cv-1976-T-24JSS

PIERRE A MAROUN, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

    THIS MATTER is before the Court on Impleaded Defendant, Maroun's International, LLC's, Motion to Dismiss and/or Motion to Strike Amended Impleader Complaint ("Motion to Dismiss") (Dkt. 418) and Plaintiff's Motion to Extend Lis Pendens ("Motion to Extend") (Dkt. 420). For the reasons that follow, the Court recommends that the Motion to Dismiss be granted in part and denied in part, and the Motion to Extend be granted.

**BACKGROUND**

    Plaintiff, Edward T. Saadi ("Mr. Saadi"), obtained a judgment in this case against Pierre A. Maroun ("Mr. Maroun") on October 2, 2009 in the total amount of $90,000. (Dkt. 230.) Since that date, Mr. Saadi has been unsuccessfully attempting to collect on the judgment. On November 7, 2009, Mr. Saadi filed a motion seeking an assignment of Mr. Maroun's ownership interest in Maroun's International LLC ("MILLC"). (Dkt. 251.) After a hearing on January 19, 2010, Magistrate Judge Pizzo entered an endorsed order denying the motion. (Dkt. 267.) Mr. Saadi sought review of that order with the District Judge and the Court overruled Mr. Saadi's objections and approved the Magistrate Judge's order. (Dkt. 270.) Specifically, the Court acknowledged Mr. Saadi's comment that Mr. Maroun's ownership interest might be worthless and agreed with the

Magistrate Judge that the motion was "futile and would waste the Court's resources." (Dkt. 270 at 3–4.)

Subsequently, Mr. Saadi filed an emergency motion for a charging order against Mr. Maroun's interest in Capital Trans International, LLC ("CTILLC") (Dkt. 274), which the Court granted. (Dkt. 276.) Soon after, Mr. Saadi filed a renewed motion for an assignment and sale of MILLC, and a motion for a charging order against MILLC. (Dkt. 280.) Mr. Saadi also filed an *ex parte* motion for a writ of garnishment (Dkt. 286), which the Court granted. (Dkt. 289.) However, the garnishee reported that the account Mr. Saadi sought to garnish had been closed. (Dkt. 294 at 3.) On February 23, 2018, Magistrate Judge Pizzo entered a Report and Recommendation finding that because Mr. Saadi could not prove Mr. Maroun was the sole member of MILLC, the "only remedy available" was a charging order against Mr. Maroun's interest in MILLC. (Dkt. 356 at 6.) The Court adopted the Report and Recommendation (Dkt. 361) and a charging order was issued. (Dkt. 362.)

Next, Mr. Saadi moved to initiate proceedings supplementary, alleging that Mr. Maroun fraudulently transferred funds to MILLC, which were used to purchase a condominium. (Dkt. 364.) On November 7, 2018, Mr. Saadi filed a notice of lis pendens regarding the condominium at issue (Dkt. 368), which was registered with the Pinellas County Clerk of Court. (Dkt. 420-1.) On March 21, 2019, the Court granted the motion for proceedings supplementary, impleaded MILLC into this action, and granted Mr. Saadi leave to file an impleader complaint against MILLC. (Dkt. 389.) On April 4, 2019, Mr. Saadi filed his impleader complaint. (Dkt. 398.) In response, MILLC moved to dismiss the impleader complaint. (Dkt. 408.) On September 10, 2019, the undersigned recommended that the motion be granted, and the impleader complaint be dismissed without prejudice to refile an amended impleader complaint. (Dkt. 415.) On September

24, 2019, Mr. Saadi filed an amended impleader complaint. (Dkt. 416.) On September 26, 2019, the Court adopted the report and recommendation and accepted Mr. Saadi's amended impleader complaint. (Dkt. 417.) In the amended impleader complaint, Mr. Saadi alleges fraudulent transfer under Florida Statutes section 56.29 (Count I), fraudulent transfer (actual fraud) under Florida Statutes section 726.101 *et seq.* (Count II), fraudulent transfer (constructive fraud) under Florida Statutes section 726.101 *et seq.* (Count III), and alter ego / reverse piercing of the corporate veil (Count IV). (Dkt. 416.)

Now, in the Motion to Dismiss, MILLC moves to dismiss the amended impleader complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 418.) Additionally, MILLC moves to strike portions of the amended impleader complaint under Rule 12(f). (Dkt. 418.) In the Motion to Extend, Mr. Saadi moves under Florida Statutes section 48.23 to extend the lis pendens on the condominium at issue in these proceedings supplementary. (Dkt. 420.)

## APPLICABLE STANDARDS

### A. Motion to Dismiss

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that the complaint contains sufficient factual allegations to allow the Court "to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 670).

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Its purpose is to "clean up the pleadings, removing irrelevant or otherwise confusing materials." *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699 (S.D. Fla. 2013). "'A motion to strike is a drastic remedy[,]' which is disfavored by the courts and 'will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (alteration in original) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cty.*, 306 F.2d 862, 868 (5th Cir. 1962)).

### B.      Motion to Extend

"The purpose of a notice of lis pendens is to notify third parties that an action regarding specified property has been filed and 'that whoever subsequently acquires an interest in the property will stand in the same position as the current owner/vendor, and take the property subject to whatever valid judgment may be rendered in the litigation.'" *Taylor v. Steckel*, 944 So. 2d 494, 497 (Fla. 3d DCA 2006) (quoting *Avalon Assocs. of Del. Ltd. v. Avalon Park Assocs., Inc.*, 760 So. 2d 1132, 1134 (Fla. 5th DCA 2000)). It protects future "purchasers or encumbrancers from becoming embroiled in the dispute" and protects "the plaintiff from intervening liens that could impair any property rights claimed and also from possible extinguishment of the plaintiff's unrecorded equitable lien." *Chiusolo v. Kennedy*, 614 So. 2d 491, 492 (Fla. 1993).

An action "not based on a duly recorded instrument," acts "as a lis pendens on any real or personal property involved therein or to be affected thereby" if "a notice of lis pendens has been

recorded and has not expired or been withdrawn or discharged." Fla. Stat. § 48.23(1)(a)–(b). However, a "notice of lis pendens is not effectual for any purpose beyond 1 year from the commencement of the action and will expire at that time . . . except when the court extends the time of expiration on reasonable notice and for good cause." Fla. Stat. § 48.23(2). The Court has "discretion to consider the extension and duration of a lis pendens on a case by case basis," *De la Fuente v. Adrian Developers Corp.*, 967 So. 2d 251, 252–53 (Fla. 3d DCA 2007), and "may impose such terms for the extension of time as justice requires." Fla. Stat. § 48.23(2).

"A court must dissolve a lis pendens that is based on an unrecorded document unless the proponent 'establish[es] a fair nexus between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit.'" *Conesco Servs., LLC v. Cuneo*, 904 So. 2d 438, 439 (Fla. 3d DCA 2005) (quoting *Chiusolo*, 614 So. 2d at 492). However, "the evaluation of 'fair nexus' is not a trial or mini-trial on the merits of all elements of the lis pendens proponent's claims." *LB Judgment Holdings, LLC v. Boschetti*, 271 So. 3d 115, 119 (Fla. 3d DCA 2019). Instead, "the lis pendens proponent must make 'a minimal showing that there is at least some basis for the underlying claim[ ] [a]nd . . . show that he or she has a good faith basis to allege facts supporting a claim, and that the facts alleged would at least state a viable claim.'" *Id.* (quoting *Nu-Vision, LLC v. Corp. Convenience, Inc.*, 965 So. 2d 232, 236 (Fla. 5th DCA 2007)).

## ANALYSIS

### A.  Motion to Dismiss

#### 1.  Statute of Limitations

MILLC argues that Mr. Saadi's claims are barred by the statute of limitations. (Dkt. 418 at 2–4.) "Generally, a statute of limitations defense is an affirmative defense that must be pled." *Foster v. Savannah Commc'n*, 140 F. App'x 905, 907 (11th Cir. 2005) (citing Fed. R. Civ. P. 8(c)).

However, a statute of limitations defense may be raised in a motion to dismiss under Rule 12(b)(6) "if it is 'apparent from the face of the complaint' that the claim is time-barred." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citing *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003); *Carmichael v. Nissan Motor Acceptance Corp.*, 291 F.3d 1278, 1279 (11th Cir. 2002)); *see also Rigby v. Liles*, 505 So. 2d 598, 601 (Fla. 1st DCA 1987) (noting that "only in extraordinary circumstances where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the statute of limitations bars the action as a matter of law, should a motion to dismiss on this ground be granted").

Thus, at this stage, MILLC's statute of limitations defense can only succeed if it is apparent from the face of the amended impleader complaint that the claims are time-barred. *See La Grasta*, 358 F.3d at 845. The crux of Mr. Saadi's claims is that funds in Mr. Maroun's possession were transferred to MILLC, and used to purchase a condominium, all for the purpose of evading collection of Mr. Saadi's judgment. (Dkt. 416 ¶¶ 18, 20–21, 25–36.) Mr. Saadi alleges that the transfer to MILLC occurred "[s]ubsequent to this Court's entry of the Judgment," but does not allege a specific date of transfer. (Dkt. 416 ¶ 18.) MILLC argues that Mr. Saadi is required to allege a specific date of transfer for purposes of establishing that his claims are *not* barred by the statute of limitations. (Dkt. 418 at 3.) But, the burden of establishing an affirmative defense rests with . . . the 'one who claims its benefits,'" *Garcia-Bengochea v. Carnival Corp.*, No. 1:19-cv-21725-JLK, 2019 WL 4015576, at *3 (S.D. Fla. Aug. 26, 2019) (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 93 (2008)), and "'plaintiff[s][are] not required to negate an affirmative defense in [their] complaint.'" *La Grasta*, 358 F.3d at 845 (alteration in original) (quoting *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)); *see also In re*

*Se. Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) ("[F]or better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can.")

### a. Count I

The parties in this case dispute which statute of limitations applies to each count. Citing to *In re Hill*, 332 B.R. 835, 843 (Bankr. M.D. Fla. 2005), MILLC argues that, although Count I is brought under the proceedings supplementary statute, Fla. Stat. § 56.29, the statute of limitations contained in the Uniform Fraudulent Transfers Act ("UFTA") applies. (Dkt. 418 at 3–4.) As relevant to this action, the UFTA provides that claims under Fla. Stat. § 726.105(1)(a) are "extinguished unless action is brought . . . within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant;" and claims under Fla. Stat. § 726.105(1)(b) are "extinguished unless action is brought . . . within 4 years after the transfer was made or the obligation was incurred." Fla. Stat. § 726.110(2). In *Hill*, the court, in dicta,[1] noted that "while proceedings supplementary in general may be commenced during the twenty year life of a judgment, § 56.29 does not extend or create new the statute of limitations for a fraudulent transfer to twenty years. The applicable limitation for fraudulent transfer actions is contained in Fla. Stat. § 726.110." 332 B.R. at 843.

Mr. Saadi disagrees and argues that "[c]laims for fraudulent transfers brought in proceedings supplementary are not subject to the statute of limitations" in UFTA but instead may be brought at any time in the life of the judgment. (Dkt. 419 at 4–6.) Mr. Saadi relies primarily on *Biel Reo, LLC v. Barefoot Cottages Development Co.*, which held that applying the UFTA's

---

[1] The court in *Hill* found that that the "neither of the two jurisdictional prerequisites for supplementary proceedings under Fla. Stat. § 56.29 [had] been satisfied." 332 B.R. at 843.

statute of limitations "does not comport with the text of § 56.29, or with the cases construing it." 156 So. 3d 506, 510 (Fla. 1st DCA 2014).  The court noted that even though "the manner of proving and defending fraudulent transfer claims under § 56.29 borrow substantively from the UFTA," this "does not require the adoption of the UFTA's much shorter limitations period, because § 56.29's contrary scheme and precedent broadly establish the availability of proceedings supplementary for the life of the judgment." *Id.* at 511.

Further, Mr. Saadi argues that *Biel Reo* is binding precedent because "absent a decision from the state supreme court on an issue of state law," this Court is "bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently." *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002).  But MILLC points to *In re British American Insurance Co.*, which specifically questions the reliability of *Biel Reo*.  *See In re British Am. Ins. Co.*, 607 B.R. 753, 760–61 (Bankr. S.D. Fla. 2019).  The court in *British American* noted that the *Biel Reo* court did not consider the 2014 amendment to section 56.29 and was decided well before the 2016 amendment, both of which explicitly addressed the interplay between section 56.29 and chapter 726.  *British Am.*, 607 B.R. at 760–61 n.2.  Thus, the court noted that "[s]ome of the decisions cited by the court in *Biel Reo* arise from facts that would not support the outcomes ordered in those decisions under the present version of section 56.29" and "certain decisions cited in *Biel Reo* in turn rely on relatively ancient Florida Supreme Court opinions that do not appear fully aligned with the propositions for which they are cited." *Id.* at 761 n.2.

However, it is not clear that *British American* is a "persuasive indication" that the Florida Supreme Court would overrule *Biel Reo*.  *British American*'s discussion of *Biel Reo* was also dicta.  The court noted that *Biel Reo* "stands for the proposition that a claim pursued under current Fla.

Stat. § 56.29(3)(b) is not subject to" UFTA's statute of limitations, but specifically found that it need not "accept or reject the rule of *Biel Reo*" because it was not presented with a claim under section 56.29(3)(b). *British Am.*, 607 B.R. at 671. Even if the court had actually ruled contrary to the *Biel Reo* rule, it is not clear that the Bankruptcy Court for the Southern District of Florida's questioning of a case is a sufficiently persuasive indication of how the Florida Supreme Court would decide the issue. *See McMahan*, 311 F.3d at 1080 ("The fact that we decided the issue differently is not a persuasive indication that the Florida Supreme Court would agree with us and not with one of its own intermediate appellate courts, which presumably knows more about Florida law than we do.").

Thus, Count I, which is a claim under section 56.29(3)(b), falls squarely within the *Biel Reo* rule, which is binding on this Court, and is therefore not subject to the UFTA's statute of limitations. Instead, a claim under section 56.29(3)(b) may be brought in proceedings supplementary within the twenty-year life of the judgment. *Biel Reo*, 156 So. 3d at 507. Nothing in the amended impleader complaint establishes that the judgment has expired as a matter of law.

### b. Counts II and III

As to Counts II and III, Mr. Saadi argues that *Biel Reo* is not "limited to claims brought under § 56.29(3)" and that each claim "in proceedings supplementary may be commenced at any time during the 20 year life of the judgment." (Dkt. 419 at 4–5.) However, as mentioned above, the breadth of *Biel Reo* is limited by subsequent amendments to section 56.29. The current statute allows the Court to "entertain claims concerning the judgment debtor's assets brought under chapter 726," but notes that such claims "are subject to chapter 726 and the rules of civil procedure." Fla. Stat. § 56.29(9). Thus, Counts II and III, which are claims under chapter 726, are subject to the statute of limitations in section 726.110. *See British Am.*, 607 B.R. at 759

(explaining that claims under chapter 726 brought in proceedings supplementary are subject to the statute of limitations in section 726.110).

Under the UFTA, counts II and III are each subject to a different statute of limitations. Count II, for actual fraud under Fla. Stat. § 726.105(1)(a), must be brought "within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." Fla. Stat. § 726.110(1). MILLC argues that, according to exhibit F to the amended impleader complaint, the alleged transfer occurred on September 7, 2012. (Dkt. 416 ¶ 18; Dkt. 416-6.) Thus, MILLC argues that this interpleader action is brought beyond four years and argues that it is brought beyond one year of when Mr. Saadi did, or reasonably could have, discovered the transfer. (Dkt. 425 at 3–5.) However, the complaint does not establish when Mr. Saadi actually received this document and discovered the transfer, a point which is disputed by the parties. (Dkt. 425 at 4; Dkt. 430 at 4.) As such, the Court cannot, on a motion to dismiss, determine whether Count II is barred by the statute of limitations. *See Desak v. Vanlandingham*, 98 So. 3d 710, 713 (Fla. 1st DCA 2012) (reversing the lower court's granting of a motion to dismiss on statute of limitations grounds and holding that "the act of recording a deed does not without more, as a matter of law, start the 'savings clause year'").

Count III, which is for constructive fraud under Fla. Stat. § 726.105(b), must be brought "within 4 years after the transfer was made or the obligation was incurred." Fla. Stat. 726.110(2). Because this section does not include the same one-year savings clause as subsection (1), a claim for constructive fraud based on a transfer in 2012 would be barred. However, Mr. Saadi argues that this claim is subject to both statutory and equitable tolling. (Dkt. 419 at 2–3.) Equitable tolling is unavailable. In providing for statutory tolling, the Florida Legislature specifically

provided that a "disability or other reason does not toll the running of any statute of limitations except those specified in this section." Fla. Stat. § 95.051(2). Based on this provision, courts have noted that "the legislature has made clear its intent to exclude all tolling exceptions not listed in the statute," *HCA Health Servs. of Fla., Inc. v. Hillman*, 906 So. 2d 1094,1098 (Fla. 2d DCA 2004), and have rejected application of equitable tolling to claims under the UFTA. *In re Burton Wiand Receivership Cases Pending in the Tampa Div. of the Middle Dist. of Fla.*, No. 8:05–cv–1856–T–27MSS, 2008 WL 818504, at *9–10 (M.D. Fla. Mar. 26, 2008). Courts have also rejected application of equitable estoppel principles to claims under the UFTA. *Nat'l Auto Serv. Ctrs., Inc. v. F/R 550, LLC*, 129 So. 3d 498, 512–14 (Fla. 2d DCA 2016); *see also SE Prop. Holdings, LLC v. Phillips*, No. 3:15-cv-554/MCR/EMT, 2016 WL 11529614, at *6 (N.D. Fla. May 4, 2016) (applying *National Auto* as binding precedent).

Mr. Saadi also argues that statutory tolling applies. (Dkt. 419 at 2–3.) Relevant here, section 95.051 provides that a limitations period may be tolled by "[a]bsence from the state of the person to be sued," Fla. Stat. § 95.051(1)(a), or by "[c]oncealment in the state of the person to be sued so that process cannot be served on him or her," Fla. Stat. § 95.051(1)(c).[2] The amended impleader complaint alleges that "[b]eginning in approximately February of 2010 and for years thereafter, [Mr.] Maroun absconded and concealed himself, and could not be located, making it impossible to serve writs of execution, charging orders, post-judgment discovery requests, or other process upon him to obtain information as to his assets." (Dkt. 416 ¶ 17.) Mr. Saadi also alleges several facts, which are not before the Court on this Motion to Dismiss, to further support his

---

[2] The court in *National Auto* determined that section 726.110 was properly considered a "statute of repose," instead of a "statute of limitations." 192 So. 3d at 509–12. This distinction, although relevant to the question whether principles of equitable tolling may apply, does not appear to prevent application of statutory tolling. *See Brown v. MRS Mfg. Co.*, 617 So. 2d 758, 759 n.5 (Fla. 4th DCA 1993) (noting that section 95.051 "should apply equally well to statutes of repose").

position that Mr. Maroun has been both absent from the state and concealed within the state for significant periods of time. (Dkt. 419 at 2–3.) However, that application of statutory tolling is a factual determination, which cannot be decided on a motion to dismiss. *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 906 n.50 (M.D. Fla. 2007). As such, the Court cannot, at this stage, determine whether Count III is time-barred.

### 2. Sufficiency of Count I

MILLC argues that Mr. Saadi has not properly pleaded Count I. (Dkt. 418 at 5–8.) Notably, MILLC does not argue that Count I fails to state a claim for fraudulent transfer but instead argues that Count I does not clearly specify whether it is brought pursuant to section 56.29(3)(a), (3)(b), or (9). (Dkt. 418 at 5.) In response, Mr. Saadi notes that neither section 56.29(3)(a), which allows for burden shifting in certain cases, nor section 56.29(9), which authorizes additional claims under the UFTA, provide independent causes of action. (Dkt. 419 at 9.) Thus, Mr. Saadi argues that Count I is clearly based on section 56.29(3)(b). (Dkt. 419 at 9.) Indeed, MILLC acknowledges that section 56.29(3)(b) "is the appropriate section used for fraudulent transfers." (Dkt. 418 at 5.) Thus, the parties agree that Count I states a claim under section 56.29(3)(b). *See British Am.*, 607 B.R. at 757 ("Subsection (3)(b) provides a narrowly tailored substantive claim based in fraudulent transfer, independent of Florida's primary fraudulent transfer statute contained in chapter 726.").

Nevertheless, MILLC argues that Mr. Saadi seeks relief that is not available under section 56.29(3)(b). (Dkt. 418 at 5–7.) First, MILLC argues that subsection (3)(b) does not allow Mr. Saadi to obtain a money judgment against MILLC. (Dkt. 418 at 6.) Mr. Saadi argues he can obtain a money judgment under section 56.29(6). (Dkt. 419 at 9–10.) In *British American*, the court addressed Mr. Saadi's position and found it "contrary to the text of section 56.29 taken as a whole." 607 B.R. at 757 n.1. The court noted that "the power to enter money judgments under subsection

(6) is limited to claims aimed at recovery of property of the judgment debtor held by another and property payable to the judgment debtor" but the "power to enter money judgments under subsection (6) does not extend to relief sought under subsection (3)(b)." *Id.* The undersigned finds the reasoning in *British American* to be persuasive on this issue and recommends that the Court strike Count I's demand for money judgment. *See Collier v. Wright Nat'l Flood Ins. Co.*, No. 2:19-cv-49-FtM-38MRM, 2019 WL 1531895, at *1 (M.D. Fla. Apr. 9, 2019) (striking a demand for relief not available as a matter of law).

Additionally, MILLC argues that Count I improperly requests an award of attorney's fees and costs against MILLC under section 56.29(8). (Dkt. 416 at 7.) Section 56.29(8) allows for "[c]osts for proceedings supplementary" and "[r]easonable attorney fees" to be "taxed against the *judgment debtor*." Fla. Stat. § 56.29(8) (emphasis added). Based on the plain language of the statute, the Court agrees with MILLC that fees and costs the statute does not allow fees and costs to be taxed against an impleaded defendant. As such, the undersign recommends that the Court strike Count I's demand for an award of fees and costs against MILLC.

### 3. Redundancy of Counts II and III

Next, MILLC argues that Counts II and III are improperly pleaded because they are redundantly based on the same factual allegations in Count I. (Dkt. 418 at 8.) However, MILLC cites no authority for the proposition that pleading separate legal theories based on the same factual circumstances is impermissible. Even the case cited by MILLC, *Toala v. City of Miami Beach*, notes that pleading separate claims based on the same underlying circumstances is "discretionary" but "preferable." No. 08-20884-CIV-JORDAN, 2008 WL 11411152, at *1 (S.D. Fla. Aug. 13, 2008). Thus, the undersigned finds no basis to dismiss or strike Counts II and III, which seek relief based upon different legal theories. *See also Douberley v. Burger King Corp.*, No. 8:06-cv-1844-

T-17 EAJ, 2007 WL 1175757, at *3 (M.D. Fla. Apr. 20, 2007) ("Direct and vicarious liability can be pled as alternative legal theories in separate counts under the same factual allegations.").

### 4. Count IV

MILLC argues that "because Counts I, II, and III are not properly pleaded, Count IV (to pierce the corporate veil) cannot stand on its own." (Dkt. 418 at 4.) Because the undersigned recommends rejecting MILLC's arguments for dismissing Counts I, II, and III, this argument should also be rejected. However, while "Florida courts permit alter ego allegations to be pled as a distinct cause of action," federal courts "generally find that '[a]lter ego is not a separate cause of action for which relief can be granted; rather, . . . alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity."[3] *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011) (alterations in original) (quoting *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, No. 09–CV–61436, 2010 WL 1531489, at *9 (S.D. Fla. Apr. 16, 2010)). When presented with a stand-alone claim of alter ego allegations, federal courts will often dismiss the count with leave to replead the allegations in the body of the Complaint. *See id.* As such, the undersigned recommends that Count IV be dismissed with leave for Mr. Saadi to replead the theory of liability as appropriate.[4]

---

[3] In this case, Mr. Saadi seeks "reverse piercing" of the corporate veil for purposes of imposing liability upon MILLC for the acts of Mr. Maroun. (Dkt. 416 at 14–16.)

[4] Pleading a separate claim for piercing the corporate veil may also present a jurisdictional concern. *See Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc.*, No. 5:10–cv–329–Oc–32PRL, 2018 WL 829126, at *2 (M.D. Fla. Feb. 12, 2018) (explaining that "there is a difference between proceeding under Florida Statutes § 56.29 and Chapter 726 to undo a fraudulent transfer of assets and . . . seeking a judgment of liability against the implead[ed] parties for existing federal judgments"); *compare Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1131 (11th Cir. 2013) ("The supplementary proceeding here is an independent civil action because it seeks to impose new liability on new parties founded on wholly new legal theories and based on a completely different factual matrix."), *with Nat'l Mar. Servs., Inc. v. Straub*, 776 F.3d 783, 788 (11th Cir. 2015) (holding that *Jackson-Platts* did not apply because "National Maritime sought to recover only a fraudulently transferred asset from a third party"); *see also Peacock v. Thomas*, 516 U.S. 349, 357 (1996) (noting that the Supreme Court has "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment").

### 5. Motion to Strike

MILLC moves to strike paragraphs thirteen and fifteen from the amended impleader complaint. (Dkt. 418 at 9.) Paragraph thirteen alleges:

> From the outset, this case has its genesis in dishonesty and fraud. After a three-day trial in 2009, the jury in this case unanimously determined that Maroun fabricated, and published to the internet, a series of outrageously defamatory statements. The jury found Maroun's actions so egregious that they not only rendered an award of $30,000 in compensatory damages, but also twice that amount—$60,000—in punitive damages. In doing so, the jury necessarily believed that Maroun's primary purpose was to indulge in ill will, hostility, and intent to harm Saadi.

(Dkt. 416 ¶ 13.) Paragraph fifteen alleges: "Post-judgment, the dishonesty and fraud have continued unabated as Maroun has engaged in a pattern of fraudulently evading collection of the Judgment." (Dkt. 416 ¶ 15.)

MILLC argues that these paragraphs attempt to create a "narrative," which "should be made during a closing argument at a jury trial." (Dkt. 418 at 9.) The undersigned agrees with Mr. Saadi (Dkt. 419 at 11) that paragraphs thirteen and fifteen describe Mr. Saadi's view of the posture of the case. MILLC has not shown that the allegations have "no possible relation to the controversy" or that MILLC is prejudiced by their inclusion in the amended impleader complaint. *See Thompson*, 211 F. Supp. 2d at 1348. Short of conclusory statements, MILLC does not explain how it is prejudiced or why it cannot respond to the allegations in accordance with Rule 8(b). As such, the undersigned recommends that the Motion to Dismiss be denied to the extent it asks the Court to strike paragraphs thirteen and fifteen.

### B. Motion to Extend

In seeking to undo the allegedly fraudulent transfer of funds to MILLC, which Mr. Saadi alleges were used to purchase the condominium, Mr. Saadi argues that the lis pendens continues to be necessary to protect his potential interest in the condominium, "to protect unwitting prospective purchasers and encumbrancers, and to maintain the status quo during the pendency of

the matter." (Dkt. 420 at 2.) Based on the allegations in the amended impleader complaint, as well as the parties' submissions, the undersigned finds that Mr. Saadi has shown a good faith basis for alleging claims that might affect ownership of the condominium. *See LB Judgment Holdings*, 271 So. 3d at 119.

MILLC cites to *Blue Star Palms, LLC v. LED Trust, LLC*, for the proposition that "'[a] complaint which will not support a claim against the specific property at issue cannot provide a basis for tying it up by a filing of notice of lis pendens.'" 128 So. 3d 36, 38 (Fla. 3d DCA 2012) (quoting *Lake Placid Holding Co. v. Paparone*, 414 So. 2d 564, 566 (Fla. 2d DCA 1982)). While that is true, *Blue Star* is distinguishable. In that case, the respondents "brought an action seeking to have their alleged membership interests in Blue Star recognized," but title to the condominium units at issue was "held by the Blue Star entities, with any ownership interest in the properties two levels removed." 128 So. 3d at 39. Based on this separation of ownership interests, the court found that the "lawsuit for damages and membership interests in the parent company [did] not directly affect the real estate, and a lis pendens [could not] be maintained." *Id.*

Instead, the undersigned agrees with Mr. Saadi that this case is more like *LB Judgment*. In that case, LB Judgment "alleged that Boschetti had engaged in fraudulent transfers of assets in order to avoid collection of LB Judgment's judgment, subject to avoidance" under the UFTA. 271 So. 3d at 120. The court noted that LB Judgment had properly commenced proceedings supplementary against several alleged alter ego entities and noted that "if LB Judgment proves its allegations, it may recover the judgment debt through an execution and sale of the property or other assets transferred to Boschetti, or controlled by him, to the extent of that debt and the extent of Boschetti's interest in a particular property or asset." *Id.* at 121. Similarly, if Mr. Saadi proves

his allegations, he may recover his judgment through an execution and sale of the condominium at issue in this case. *See* Fla. Stat. 56.29(3)(b).

Because Mr. Saadi's potential interest in the condominium is the same as when he originally filed the lis pendens, an extension is warranted. *See Taylor v. Steckel*, 944 So. 2d 494, 487 (Fla. 3d DCA 2006) ("Steckel's interest in the property was the same as it was on the day the action commenced. Thus, the necessity of protecting Steckel's interests, putting third parties on notice of Steckel's pending claims, and preserving the court's authority to deal with the property remained unchanged and justified an extension."). The undersigned recommends that the lis pendens be extended until the conclusion of these proceedings supplementary. *See* Fla. Stat. § 48.23(2) ("The court may impose such terms for the extension of time as justice requires.")

Accordingly, it is **RECOMMENDED** that:

1. Impleaded Defendant, Maroun's International, LLC's, Motion to Dismiss and/or Motion to Strike Amended Impleader Complaint (Dkt. 418) be **GRANTED IN PART** to the extent that:

    a. The Court strike the demand for a money judgment plus fees and costs against Maroun's International, LLC contained in Count I;

    b. Count IV be **DISMISSED** without prejudice;

    c. Mr. Saadi be granted leave to file a second amended impleader complaint within twenty-one (21) days; and

    d. The motion be otherwise **DENIED**.

2. Maroun's International, LLC be ordered to file an answer within twenty-one (21) days of the filing of a second amended impleader complaint or within thirty (30) days from the date of the order on this report and recommendation, whichever is later.

3. Plaintiff's Motion to Extend Lis Pendens (Dkt. 420) be **GRANTED**.

4. The lis pendens on the property at 500 N. Osceola Ave., Unit 102, Clearwater, FL 33755 (Dkt. 368) be extended until the conclusion of these proceedings supplementary.

**IT IS SO REPORTED** in Tampa, Florida, on January 3, 2020.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Susan C. Bucklew
Counsel of Record